No. 25-30075

# In the United States Court of Appeals for the Fifth Circuit

JOSHUA J. NAVY, INDIVIDUALLY, ON BEHALF OF J. N.; WAYNISHA D. NAVY, INDIVIDUALLY, ON BEHALF OF J. N.; ASHLEY MAYFIELD, INDIVIDUALLY, ON BEHALF OF M. D. P. M., A. E. P. M., AND A. M. P. M; MICHAEL MAYFIELD, INDIVIDUALLY, ON BEHALF OF M. D. P. M., A. E. P. M., AND A. M. P. M,
*Plaintiffs-Appellees*

v.

SCHOOL BOARD OF ST. MARY PARISH,
*Defendant-Appellant,*

———————————

On Appeal from the United States District Court
for the Western District of Louisiana,
No. 6:65-cv-11351, District Judge Robert R. Summerhays

———————————

**BRIEF OF SCHOOL BOARD OF ST. MARY PARISH**

———————————

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 94005
Baton Rouge, LA 70804
(225) 999-6864

MORGAN E. BRUNGARD
Deputy Solicitor General

*Counsel for Defendant-Appellant*

# CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellant-Defendant—as a "governmental" party—need not furnish a certificate of interested persons.

*/s/ Morgan Brungard*
MORGAN BRUNGARD

## STATEMENT REGARDING ORAL ARGUMENT

The orders on appeal present jurisdictional, procedural, and equitable questions about whether a new set of plaintiffs can revive a case forty years after the original plaintiffs have no objection to indefinitely staying the case—just because it is a "desegregation" case. A straightforward application of well-established principles says the answer is no. This procedural history, however, is not unique. Many Louisiana school boards are facing "revived" desegregation cases from the 1960s that followed the same pattern. Given the precedential significance of this case, the Court may find oral argument beneficial.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ii

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS ........................................................................iv

TABLE OF AUTHORITIES...................................................................vi

JURISDICTIONAL STATEMENT ......................................................... 1

ISSUES PRESENTED FOR REVIEW ..................................................... 3

INTRODUCTION................................................................................... 6

STATEMENT OF THE CASE ............................................................. 10

   A.  1965-66: THE BOARD VOLUNTARILY ENDS MANDATORY
      SEGREGATION. ................................................................... 10

   B.  1967-69: THIS COURT INSTITUTES AFFIRMATIVE ACTION. ................ 13

   C.  1970-71: THE BOUDREAUXES AND BOURGEOIS SEEK MODIFICATION
      FOR THE LAST TIME.......................................................... 17

   D.  1973-75: THE BOUDREAUXES AND BOURGEOIS HAVE NO
      OBJECTION TO DISMISSING THE CASE................................ 19

   E.  1979-2016: THE BOUDREAUXES AND BOURGEOIS REMAIN
      SATISFIED. ....................................................................... 21

   F.  2016-24: USDOJ AND NAACP REVIVE THE CASE............................ 23

   G.  2024-25: THE DISTRICT COURT DECLINES TO FOLLOW THE
      FEDERAL RULES OF CIVIL PROCEDURE............................... 25

SUMMARY OF THE ARGUMENT ...................................................... 27

ARGUMENT ....................................................... 28

I.   ARTICLE III JURISDICTION HAS LAPSED. ........................... 28

   A.   The Boudreauxes' and Bourgeois' Claims Are Moot. ................ 28

   B.   The Boudreauxes' and Bourgeois' Claims Are Satisfied. ........... 42

II.  THE 2019 PLAINTIFFS' REQUESTS SHOULD BE DISMISSED. ............... 44

   A.   The 2019 Plaintiffs Lack Standing to Enforce or Modify Judge
        Putnam's Decrees. ....................................... 45

   B.   The 2019 Plaintiffs Lack Standing to Bring New Claims for
        Injunctive Relief and Have Failed to State a Claim for Relief
        under Rule 12(b)(6). ...................................... 48

   C.   The 2019 Plaintiffs Have Failed to Prosecute and Are Barred
        by Laches. .............................................. 54

III. RULE 60(B)(5) APPLIES HERE. ..................................... 62

CONCLUSION ..................................................... 66

CERTIFICATE OF SERVICE ........................................ 67

CERTIFICATE OF COMPLIANCE .................................... 68

# TABLE OF AUTHORITIES

## Cases

*Acheson Hotels, LLC v. Laufer,*
  601 U.S. 1 (2023) ................................................................ 45

*Ackermann v. United States,*
  340 U.S. 193 (1950) ........................................................... 10

*Adegbenro v. Bank of Am., N.A.,*
  No. 4:22-CV-00828, 2023 WL 4275507 (S.D. Tex. June 12, 2023) ...... 51

*Ali v. Quarterman,*
  607 F.3d 1046 (5th Cir. 2010) ............................................ 21

*Allen v. Wright,*
  468 U.S. 737 (1984) ................................................. 45, 46, 47

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) ........................................................... 33

*Ariz. Christian Sch. Tuition Org. v. Winn,*
  563 U.S. 125 (2011) ............................................................. 9

*Arnold v. Williams,*
  979 F.3d 262 (5th Cir. 2020) ............................................ 62

*Augustus v. Bd. of Pub. Instruction of Escambia Cnty.,*
  306 F.2d 862 (5th Cir. 1962) ............................................ 64

*Badger v. Badger,*
  2 Wall. 87 (1865) ............................................................... 58

*Baum v. Blue Moon Ventures, LLC,*
  513 F.3d 181 (5th Cir. 2008) ....................................... 63, 65

*Baylor v. U.S. Dep't of Hous. & Urb. Dev.,*
  913 F.2d 223 (5th Cir. 1990) ............................................ 48

*Bd. of Sch. Comm'rs of the City of Indianapolis v. Jacobs,*
  417 U.S. 929 (1974) ............................................................... 36

*Berger v. Compaq Comput. Corp.,*
  257 F.3d 475 (5th Cir. 2001) ................................................. 42

*Bing v. Roadway Exp.,* Inc.,
  485 F.2d 441 (5th Cir. 1973) ................................................. 34

*BLOM Bank SAL v. Honickman,*
  No. 23-1259, 2025 WL 1583305 (U.S. June 5, 2025) ........... 10

*Bd. of Educ. of Okla. City Pub. Schs. v. Dowell,*
  498 U.S. 237 (1991) ..................................................... passim

*Bd. of Sch. Comm'rs of Indianapolis v. Jacobs,*
  420 U.S. 128 (1975) ........................................ 35, 36, 38, 42

*Boazman v. Econ. Lab'y, Inc.,*
  537 F.2d 210 (5th Cir. 1976) ................................................. 56

*Borel ex rel AL v. Sch. Bd. Saint Martin Par.,*
  44 F.4th 307 (5th Cir. 2022) ................................................. 28

*Bowman v. Wathen,*
  1 How. 189 (1843) ................................................................ 58

*Brown & Williamson Tobacco Corp. v. United States,*
  201 F.2d 819 (6th Cir. 1953) ......................................... 64, 65

*Brown v. Bd. of Educ.,*
  347 U.S. 483 (1954) ............................................................. 60

*Brown v. Phila. Hous. Auth.,*
  350 F.3d 338 (3d Cir. 2003) ................................................. 34

*Campbell v. Wilkinson,*
  988 F.3d 798 (5th Cir. 2021) ................................................. 56

*Cardoni v. Prosperity Bank*,
  805 F.3d 573 (5th Cir. 2015) ............................................................... 2

*Casillas v. Madison Ave. Assocs., Inc.*,
  926 F.3d 329 (7th Cir. 2019) ............................................................. 45

*Chavez v. Plan Benefit Servs., Inc.*,
  108 F.4th 297 (5th Cir. 2024) ........................................................... 28

*Chavez v. Plan Benefit Servs., Inc.*,
  957 F.3d 542 (5th Cir. 2020) ........................................................... 30

*CitiFinancial Corp. v. Harrison*,
  453 F.3d 245 (5th Cir. 2006) ........................................................... 21

*City of Sherrill v. Oneida Indian Nation of N.Y.*,
  544 U.S. 197 (2005) ............................................................... 57, 61

*Cutrera v. Bd. of Sup'rs of La. State Univ.*,
  429 F.3d 108 (5th Cir. 2005) ........................................................... 50

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ................................................................... 28

*Delta Theatres, Inc. v. Paramount Pictures, Inc.*,
  398 F.2d 323 (5th Cir. 1968) ....................................................... 56, 57

*Dietz v. Bouldin*,
  579 U.S. 40 (2016) ................................................................... 55

*Duhon v. Tatje*,
  No. CV 90-1669, 2024 WL 4818269 (E.D. La. Nov. 18, 2024) ............ 43

*Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*,
  948 F.3d 261 (5th Cir. 2020) ........................................................... 58

*Escalante v. Lidge*,
  34 F.4th 486 (5th Cir. 2022) ........................................................... 62

*Fennell v. Marion Indep. Sch. Dist.*,
  804 F.3d 398 (5th Cir. 2015) ............................................................ 52

*Flecha v. Medicredit, Inc.*,
  946 F.3d 762 (5th Cir. 2020) ............................................................ 47

*Flores v. Arizona*,
  516 F.3d 1140 (9th Cir. 2008) .......................................................... 47

*Fowler v. Birmingham News Co.*,
  608 F.2d 1055 (5th Cir. 1979) .......................................................... 48

*Frazar v. Ladd*,
  457 F.3d 432 (5th Cir. 2006) ............................................................ 62

*Freeman v. Pitts*,
  503 U.S. 467 (1992) ................................................................ 7, 10, 17

*Frew ex rel. Frew v. Hawkins*,
  540 U.S. 431 (2004) .......................................................................... 63

*Frew v. Janek*,
  780 F.3d 320 (5th Cir. 2015) ............................................................ 62

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) .......................................................................... 35

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013) ...................................................................... 29, 40

*Gerstein v. Pugh*,
  420 U.S. 103 (1975) ................................................................ 29, 38, 40

*Golden v. Dirs. of Pub. Sch. of New Orleans*,
  34 La. Ann. 354 (1882) .................................................................... 42

*Graves v. Walton Cnty. Bd. of Educ.*,
  686 F.2d 1135 (5th Cir. 1982) .................................................. 31, 32, 34

*Griggs v. S.G.E. Mgmt., L.L.C.,*
  905 F.3d 835 (5th Cir. 2018) ............................................................. 55

*Hall v. St. Helena Par. Sch. Bd.,*
  417 F.2d 801 (5th Cir. 1969) ............................................................. 16

*Hendrick v. Avent,*
  891 F.2d 583 (5th Cir. 1990) ............................................................. 64

*Henry v. Clarksdale Mun. Separate Sch. Dist.,*
  579 F.2d 916 (5th Cir. 1978) ............................................................. 59

*Hervey v. City of Little Rock,*
  787 F.2d 1223 (8th Cir. 1986) ........................................................... 42

*Hines v. Rapides Par. Sch. Bd.,*
  479 F.2d 762 (5th Cir. 1973) ............................................................. 49

*In re Ryan,*
  88 F.4th 614 (5th Cir. 2023) ....................................................... 54, 55

*Jackson v. DeSoto Par. Sch. Bd.,*
  585 F.2d 726 (5th Cir. 1978) ....................................................... 50, 64

*John v. Louisiana,*
  828 F.2d 1129 (5th Cir. 1987) ........................................................... 56

*Johnson v. Zerbst,*
  304 U.S. 458 (1938) ......................................................................... 65

*Jones v. Caddo Par. Sch. Bd.,*
  704 F.2d 206 (5th Cir. 1983), *on reh'g,* 735 F.2d 923 (5th Cir. 1984)..30

*Jones v. Caddo Par. Sch. Bd.,*
  735 F.2d 923 (5th Cir. 1984) ............................................................... 9

*Jumbo v. Mobil Oil Corp.,*
  981 F.2d 1256 (5th Cir. 1992) ........................................................... 54

*Keyes v. School Dist. No. 1*,
  413 U.S. 189 (1973) ............................................................ 53

*Lee v. Delta Airlines, Inc.*,
  988 F.2d 1209 (5th Cir. 1993) ........................................ 61

*Liddell ex rel. Liddell v. Bd. of Educ. of City of St. Louis*,
  142 F.3d 1103 (8th Cir. 1998) ................................... 59, 65

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................ 45

*Marden v. Int'l Ass'n of Machinists & Aerospace Workers*,
  576 F.2d 576 (5th Cir. 1978) ......................................... 41

*Milliken v. Bradley*,
  433 U.S. 267 (1977) ........................................................ 63

*Missouri v. Jenkins*,
  515 U.S. 70 (1995) .......................................................... 63

*Morris v. Ocean Sys.*,
  730 F.2d 248 (5th Cir. 1984) ......................................... 56

*Murray v. Fid. Nat'l Fin., Inc.*,
  594 F.3d 419 (5th Cir. 2010) .................................... 42, 44

*Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of
  Jacksonville*,
  508 U.S. 656 (1993) ........................................................ 46

*Nielsen v. Preap*,
  586 U.S. 392 (2019) ................................................... 29, 39

*Partington v. Am. Int'l Specialty Lines Ins. Co.*,
  443 F.3d 334 (4th Cir. 2006) ......................................... 35

*Pasadena City Bd. of Ed. v. Spangler*,
    427 U.S. 424 (1976) .................................................. 2, 35, 37

*Pederson v. La. State Univ.*,
    213 F.3d 858 (5th Cir. 2000) ............................................. 46

*Pegues v. Morehouse Par. Sch. Bd.*,
    632 F.2d 1279 (5th Cir. 1980) ................................. 59, 60, 61

*Pershing, L.L.C. v. Kiebach*,
    819 F.3d 179 (5th Cir. 2016) ............................................. 28

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014) ..................................................... 58

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..................................................... 41

*Pickens v. Okolona Mun. Separate Sch. Dist.*,
    594 F.2d 433 (5th Cir. 1979) ............................................. 21

*Price v. Austin Indep. Sch. Dist.*,
    945 F.2d 1307 (5th Cir. 1991) ........................................... 60

*Priester v. Lowndes Cty.*,
    354 F.3d 414 (5th Cir. 2004) ............................................. 52

*Richardson v. Byrd*,
    709 F.2d 1016 (5th Cir. 1983) ...................................... 30, 33

*Roadway Exp., Inc. v. Piper*,
    447 U.S. 752 (1980) ..................................................... 55

*Rogers v. Kroger Co.*,
    669 F.2d 317 (5th Cir. 1982) ........................................ 56, 57

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992) ..................................................... 62

*Salazar v. Buono,*
  559 U.S. 700 (2010) ........................................................... 46

*Salmon v. City of Stuart,*
  194 F.2d 1004 (5th Cir. 1952) ............................................ 57

*Singleton v. Jackson Mun. Separate Sch. Dist.,*
  419 F.2d 1211 (5th Cir. 1969) ........................................... 18

*Smith v. Bayer Corp.,*
  564 U.S. 299 (2011) ........................................................... 47

*Smith v. Bogalusa City,*
  No. 23-30707, 2024 WL 1156536 (5th Cir. Mar. 18, 2024) ................. 56

*Sosna v. Iowa,*
  419 U.S. 393 (1975) ............................................. 29, 36, 38

*Spangler v. United States,*
  415 F.2d 1242 (9th Cir. 1969) .............................................. 2

*Standard Fire Ins. Co. v. Knowles,*
  568 U.S. 588 (2013) ........................................................... 47

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ............................................................ 54

*Stirman v. Exxon Corp.,*
  280 F.3d 554 (5th Cir. 2002) ............................................. 41

*Students for Fair Admissions, Inc. v. President &*
  *Fellows of Harvard Coll.,*
  600 U.S. 181 (2023) ........................................................... 60

*Swann v. Charlotte-Mecklenburg Bd. of Educ.,*
  402 U.S. 1 (1971) ............................................................. 49

*Swift & Co. v. Hocking Valley Ry. Co.*,
  243 U.S. 281 (1917) ............................................................ 41

*Tasby v. Estes*,
  643 F.2d 1103 (5th Cir. 1981) ............................................ 34

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ..................................................... 28, 45

*U.S. Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980) ........................................................... 39

*United States v. Jefferson Cnty. Bd. of Educ.*,
  380 F.2d 385 (5th Cir. 1967) ............................................ 13

*United States v. One 1988 Dodge Pickup*,
  959 F.2d 37 (5th Cir. 1992) .............................................. 63

*United States v. Overton*,
  834 F.2d 1171 (5th Cir. 1987) .......................................... 61

*United States v. Sanchez-Gomez*,
  584 U.S. 381 (2018) ........................................................... 29

*Uptown Grill, L.L.C. v. Shwartz*,
  817 F.3d 251 (5th Cir. 2016) ....................................... 58, 59

*Wagner v. Baird*,
  7 How. 234 (1849) ............................................................. 58

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................... 30

*Ward v. Hellerstedt*,
  753 F. App'x 236 (5th Cir. 2018) ............................ 40, 42, 44

*Warth v. Seldin*,
  422 U.S. 490 (1975) ........................................................... 48

*Washington v. Davis,*
  426 U.S. 229 (1976) ............................................................... 51, 52, 53

**Statutes**

28 U.S.C. § 1292 ..................................................................... 1, 2

**Other Authorities**

3 Blackstone, Commentaries 295-96 (1768) .......................................... 56

**Rules**

Fed. R. App. P. 28(i) .................................................................. 2

Fed. R. Civ. P. 12 ..................................................................... 33

Fed. R. Civ. P. 23 .............................................................. 29, 33, 40

Fed. R. Civ. P. 41 ..................................................................... 55

## JURISDICTIONAL STATEMENT

This appeal involves the St. Mary Parish School Board's attempt to clarify the jurisdictional, procedural, and equitable rules that apply when a new set of plaintiffs attempts to revive a never-certified case forty years after the original plaintiffs had no objection to declaring the school system desegregated and staying the case indefinitely. The Board has timely appealed two orders. *See* ECF 1 (first Notice of Appeal); ECF 11 (second Notice of Appeal). The first is an order issued from the bench (January Bench Ruling) denying the Board's (a) motion to dismiss for lack of standing, failure to prosecute, and laches and (b) motion to strike Plaintiffs' request to expand the injunction under Rule 60(b)(5). *See* ECF 1. The second order (February Order) blocked the Board from pursuing its arguments to dissolve the injunction under Rule 60(b)(5). *See* ECF 11. The Court's administrative case-opening functions appear to have consolidated the appeals.

The Court has jurisdiction over both orders under 28 U.S.C. § 1292(a)(1) for the reasons already explained. *See* ECF 1, 11, 48 (Opp'n to Pls' Mot. Dismiss the Appeal). Additionally, the Board agrees with the

State's amicus brief on the issue (ECF 59-1) and adopts it by reference. *See* Fed. R. App. P. 28(i).

As to the strike question, an "interlocutory appeal" of "the Board's motion to strike" in a desegregation case is allowed under "28 U.S.C. § 1292(a)(1)." *Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 427 (1976). In *Spangler*, there was § 1292(a)(1) jurisdiction because, "striking the allegations" had the "practical" effect of "den[ying] the government's request for an injunction." *Spangler v. United States*, 415 F.2d 1242, 1247 (9th Cir. 1969). Same here: Denying the Board's motion to strike Plaintiffs' request for "further [injunctive] relief" had the practical effect of "continuing" the injunction. 28 U.S.C. § 1292(a)(1); ECF 1, 11 (describing the practical effect standard).

The strike question also is "inextricably intertwined with the injunction rulings"—yet another source of § 1292(a)(1) jurisdiction. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 579 (5th Cir. 2015). The January Bench Ruling's denial of the strike motion and the February Order raise the same question: whether Rule 60(b)(5) applies to requests to modify a desegregation injunction. For any and all of these reasons, the Court has 1292(a)(1) jurisdiction over both orders.

## ISSUES PRESENTED FOR REVIEW

(1) Can a district court and the parties avoid Rule 23's mandatory class certification requirement by treating the case as a class action?

(2) The general rule is that a student plaintiff's claims for injunctive relief from school policies become moot when she graduates or otherwise leaves the school system. *See infra* Section I(A). But graduation-induced mootness does not set in if the case is properly certified as a class action under Rule 23 *before* graduation. *Id.* Can a district court continue to exercise jurisdiction after a student plaintiff graduates and her claims become moot simply by treating the case as a class action instead of formally certifying it under Rule 23?

(3) Does a purported class member gain standing to enforce or modify an injunction when the court and the parties treat the case as a class action instead of formally certifying it under Rule 23?

(4) Can purported class members who never (a) challenge the named plaintiffs' adequacy of representation or (b) seek to intervene (c) decades later replace the named plaintiffs and (d) formally

3

certify the class under Rule 23, then (e) reverse the original named plaintiffs' decisions from decades before?

(5)   To end a desegregation case, must a district court require "the Board [make] a sufficient showing of constitutional compliance … to allow the injunction to be dissolved" under *Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 249 (1991)— no matter the plaintiffs' actions or any generally applicable rules warranting dissolution or dismissal?

(6)   Does *Dowell*'s "showing of constitutional compliance" requirement, *id.*, bar (a) courts from dismissing desegregation cases when plaintiffs fail under Rule 41(b) to prosecute their claims, (b) courts from dismissing desegregation cases for laches when plaintiffs' unreasonable delay prejudices the defendant school board, or (c) parties in desegregation cases from seeking to modify or vacate injunctions under Rule 60(b)?

(7)   When a plaintiff rebuts *Dowell*'s "showing of constitutional compliance" necessary "to allow the injunction to be *dissolved*," 498 U.S. at 249 (emphasis added), does that separately entitle the plaintiff to *expand* the injunction?

4

(8)    Can a court dismiss a case for failure to prosecute under Rule 41(b) or laches when (a) the court sets a deadline for a plaintiff to raise any and all objections to dismissing the case with prejudice, (b) the plaintiff has none, (c) the case is stayed indefinitely, (d) the defendant continues to file reports, and (f) the plaintiff raises no further issues for forty years?

## INTRODUCTION

This is a story of bravery and success. In 1965, Claude Boudreauxes and his two children, Gwen and Bruce, and Shelby Bourgeois and his three children, Debra, Crystal, and Melany, filed this lawsuit to desegregate the public schools in St. Mary Parish, Louisiana. The NAACP Legal Defense Fund (NAACP) represented them. Though their Complaint asserted class-action status, they never certified it as such under Federal Rule of Civil Procedure 23. Even so, the structural reform they achieved, by definition, benefitted all St. Mary students. The United States, through the Department of Justice (USDOJ), soon piled on as amicus curiae with all the powers of a party.

The Boudreauxes' and Bourgeois' winning record started immediately with a permanent injunction stopping the Defendants from using race to sort students into schools. From 1965 to 1975, they won additional permanent injunctions stopping the racial separation of faculty and staff, transportation services, extracurricular activities, and facilities—as well as institutional-reform injunctions requiring policies aimed at eliminating discriminatory effects.

Their "end purpose" always was "to restore state and local authorities to the control of a school system that is operating in compliance with the Constitution." *Freeman v. Pitts*, 503 U.S. 467, 489 (1992). In 1975, when given 30 days to raise any remaining issues about whether the St. Mary school system was "operating in compliance with the Constitution," they had no objections to restoring "state and local" control. *Id.* To be doubly sure, the district court stayed the case indefinitely, and the School Board continued filing biannual reports for eight years (until 1983). The Boudreauxes and Bourgeois (and every person they purported to represent and USDOJ) were satisfied with the status quo. They had accomplished what they set out to do.

Of course, precedent changed over time. In 1991, for example, the Supreme Court changed the "showing of constitutional compliance" needed "to allow the [desegregation] injunction to be dissolved." *Dowell*, 498 U.S. at 249. The new standard was "whether the Board had complied in good faith with the desegregation decree since it was entered, and whether the vestiges of past discrimination had been eliminated to the extent practicable." *Id.* at 249-50.

7

In 2016, a quarter-century after *Dowell*, USDOJ started investigating the Board's "compliance" with *Dowell*. USDOJ requested the Board's demographic data and shared it with NAACP lawyers in New York and Washington, DC, who then revived the case. In 2018, a local attorney filed a motion "suggesting to the court that he desire[d] to enroll as 'Trial Attorney' for the Boudreauxes plaintiffs" and "move[d] that he be allowed to enroll … for [them]." ROA.1508. Once enrolled, he moved to admit the NAACP lawyers, who in turn moved to substitute as "named plaintiffs" a new group of parents (2019 Plaintiffs) with children attending St. Mary schools.

The Board has pointed out the many jurisdictional, procedural, and equitable problems apparent on the face of this "revival" attempt. But the district court slapped them down as attempts "to cut corners." ROA.8623. In that court's words: "We have to address the governing law"; "I need to get to a decision on unitary status [under *Dowell*] by the end of this year." ROA.8623, 8668.

The Supreme Court (as if anticipating this case) has warned of the separation-of-powers destroying dangers of "frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing

8

jurisdiction to enforce judicial remedies." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011). The answer is to be "more careful to insist on the formal rules of standing, not less." *Id.* Courts must be especially rigorous with "the Article III standing inquiry" in "constitutional litigation" because it "can result in rules of wide applicability that are beyond Congress' power to change." *Id.*

This Court "share[s]" that "concern for procedural regularity." *Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 938 (5th Cir. 1984) (en banc) (Higginbotham J., specially concurring in affirming denial of purported class members' intervention in long-pending Louisiana desegregation case). "The very nature of the cases with their changing class memberships dulls sensitivity to otherwise routine procedures." *Id. Jones* was "a warning" from the en banc Court "to courts struggling with public law cases" that "failure to adhere strictly to procedure" unnecessarily complicates "legal questions" "in school cases." *Id.*

Forty years later and strict adherence to procedural regularity is still a struggle. The 2019 Plaintiffs have brought a new lawsuit masquerading as a request to bring the Board into "compliance" with

*Dowell*—decided decades after the Boudreauxes and Bourgeois were okay with restoring local control and decades before the 2019 Plaintiffs joined.

The district court's vow to retroactively apply *Dowell* is an affront to Article III and the federal courts' duty (and the Board's right) to restore local control "as soon as practicable." *Freeman*, 503 U.S. at 489. As the Supreme Court unanimously reminded just last week, "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *BLOM Bank SAL v. Honickman*, No. 23-1259, 2025 WL 1583305, at *5 (U.S. June 5, 2025) (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)) (interpreting Rule 60(b)).

## STATEMENT OF THE CASE

Before the Boudreauxes and Bourgeois filed this suit in 1965, "bi-racial schools [existed] in St. Mary Parish" and had "existed as such for many years." ROA.4832. Their courage changed everything.

### A. 1965-66: The Board Voluntarily Ends Mandatory Segregation.

The Boudreauxes' and Bourgeois' Complaint is the only Complaint and remains un-amended. ROA.4816-23. Their Complaint sought "a preliminary and permanent injunction enjoining" the School Board and the Superintendent from "continuing their policy, practice, custom and

10

usage of maintaining and operating a compulsory biracial school system in the Parish and of assigning students, teachers and other school personnel to the schools operated and controlled by them on the basis of race." ROA.4817.

To accomplish that, the Complaint "pray[ed]" for eight specific injunctions to prevent the Board and the Superintendent from:

(1)    Operating "a compulsory biracial school system,"

(2)    Maintaining "a dual scheme or pattern of school zone lines or attendance area lines based on race or color,"

(3)    Assigning "pupils to the public schools of St. Mary Parish" "on the basis of race or color,"

(4)    Assigning "teachers, principals, and other professional personnel" "on the basis of race or color,"

(5)    Approving "contracts" and "budgets and dispersing funds on the basis of race or color,"

(6)    Constructing "schools" "based on race or color,"

(7)    Limiting "extracurricular activities" "solely to one of the other of the races," and

(8)    Making "any other distinctions in the operation of the schools" "based solely on race or color." ROA.4821-22.

The Complaint claimed class-action status "pursuant to Rule 23(e)(3)" "on behalf of" the Boudreauxes, Bourgeois, and other Black "children and their parents in St. Mary Parish, similarly situated."

ROA.4817. Judge Putnam was assigned. The Board sent a letter stipulating to the numerosity requirement (fact question) and attempting to stipulate to a conclusion of law—that "plaintiffs" were "under the law entitled to bring this suit as a class action." ROA.4842.

Within weeks of the Complaint (without more), the Board voluntarily abolished its policies and practices of separating students by race. The Board passed a Resolution abolishing the dual attendance zones, prohibiting assigning students to schools based on race, implementing race-neutral criteria for assigning students to schools, and allowing students to transfer schools, setting up a process and timeline for transfer decisions, and providing newspaper publication of the Board's policies. ROA.4835-39.

Three weeks later, the Boudreauxes and Bourgeois moved for judgment on the pleadings. ROA.4841. It took Judge Putnam three days to rule in their favor. ROA.4843-47 (written reasons); ROA.4848-50 (1965 Decree). He granted "an injunction … in accordance" with the Complaint's first three prayers for relief. ROA.4847, *see* ROA.4848-49 (1965 Decree "permanently restrain[ing] and enjoin[ing]" Defendants as prayed for in numbers 1-3 of the Complaint). The 1965 Decree "deferred

any action" on the remaining five prayers for relief, pending "progress of the pupil desegregation" and adopted the Board's Resolution as the court-ordered "plan of desegregation"—the institutional-reform injunction the Boudreauxes and Bourgeois sought. ROA.4851-52. Judge Putnam "retained" "jurisdiction" to supervise the Board's progress. ROA.4850.

### B.    1967-69: This Court Institutes Affirmative Action.

The Boudreauxes and Bourgeois soon sought to expand the 1965 Decree to add their last five prayers for relief. ROA.4861-63 (Aug. 8, 1966 Mot. Further Relief). They asked the district court to adopt the decree then pending before this Court in a consolidated appeal from other desegregation cases. *Id.* They asked that, "after the appeals" were "decided," "this case be immediately advanced on the calendar" to achieve "full effective relief in light of those decisions." ROA.4863. Their motion "to modify and change the plan of desegregation" was stayed "pending decision of the consolidated appeals." ROA.4885.

In March 1967, this Court, sitting en banc, "adopt[ed]" the decree before it with "changes" and handed it down as a model decree "attached to [its] opinion." *United States v. Jefferson Cnty. Bd. of Educ.*, 380 F.2d 385, 389 (5th Cir. 1967) (en banc). Accordingly, Judge Putnam granted

the stayed motion and replaced the 1965 Decree with the *Jefferson* Decree, superseding "all previous orders." ROA.5061-63 (Judgment on Motions); ROA.5064-79 (*Jefferson* Decree). Under the *Jefferson* Decree, the Board would report demographic data two times a year (biannual reports), ROA.5074-76, which continued for sixteen years. Judge Putnam instructed the parties: "If and when problems" would come to light, they were to "make application" to "amend[]" the decree. ROA.5063.

Judge Putnam held that, under the *Jefferson* Decree, the Boudreauxes and Bourgeois had "been given all of the relief they [sought]." ROA.5209. He understood "the motions" practice "in these cases" was to "request additional relief, or a remedy in addition to that provided by" the *Jefferson* Decree. ROA.5208. But if the Board ever failed to comply with "that decree," he thought "the proper procedure would be to file a rule for civil contempt." *Id.* He reiterated, "I believe the proper method of procedure is by contempt," not "by continuing extension [meaning expansion] of these orders." ROA.5209

To this day, the *Jefferson* Decree (as modified in 1969-81) remains on the books. It not only re-imposed the permanent injunction but also required the Board to "take affirmative action to disestablish all school

14

segregation and to eliminate the effects of the dual school system." ROA.5064. The *Jefferson* Decree then "set out" "particular[s]" that satisfied the Boudreauxes' and Bourgeois' remaining prayers for relief and added another seven pages of detailed regulations for the "freedom of choice" process that allowed each student to choose which school to attend and student transfers—down to letters for the Board to send to families and forms for families to fill out. ROA.5064-79

In 1968, the Supreme Court held that, while "freedom of choice" has a "place in" desegregation plans, it alone was inadequate. *See Green*, 391 U.S. at 439-40 ("[A]ll we decide today is that in desegregating a dual system a plan utilizing 'freedom of choice' is not an end in itself.").

Following *Green*, the Western District of Louisiana, sitting en banc over all then-pending desegregation cases, called for briefing and an evidentiary hearing on "whether or not each school board may continue to operate under its present plan of 'Freedom of Choice.'" ROA.5285. When the Western District ultimately upheld freedom of choice, ROA.5385-96 (per curiam), the Boudreauxes and Bourgeois appealed to this Court, ROA.5397-5403 (Notice of Appeal). This Court consolidated that appeal with many others. *See Hall v. St. Helena Par. Sch. Bd.*, 417

F.2d 801 (5th Cir. 1969). In 1969, *Hall* "reverse[d] and remand[d]" so "that a new plan [could] be put into effect in each school district." *Id.* at 809.

On remand, the Board submitted "A Proposal to Effect Total School Integration in the St. Mary Parish School System." ROA.5460-5503 (capitalization altered). The Boudreauxes and Bourgeois "consent[ed]." ROA.5543-44. Judge Putnam adopted that proposal with modifications, finding it "conform[ed] with … the Fourteenth Amendment" and would "disestablish the defendants' dual system of schools." ROA.5545-46. The new decree (1969 Decree), as before, maintained the permanent injunction and "particularly" set out the Board's "affirmative action" obligations. ROA.5546-49 (1969 Decree). Those particulars generally followed the Parish's east/west geographical split. ROA.5547-48.

Later, USDOJ moved to join this case as amicus curiae with full party powers. ROA.5553-56. Judge Putnam granted that motion. ROA.5557-58.

**C. 1970-71: The Boudreauxes and Bourgeois Seek Modification for the Last Time.**

In April 1970, Judge Putnam set a month deadline for seeking further modification of the Decree. ROA.5637. The Boudreauxes and Bourgeois so moved. ROA.5645-47.

Three months later, Judge Putnam issued an "Opinion and Order" (1970 Order) modifying the requirements for schools on the west side of the Parish. (Remember that *Dowell*'s standard for establishing constitutional compliance was still twenty-one years in the future. 498 U.S. at 249-50.). Separated by the "Atchafalaya River" and "Wax Lake Drainage Canal," the east and west sides of the Parish "differ[ed] dramatically in [their] economic, industrial, and geographic make-up"— and "demographically." ROA.5730-33. The 1970 Order found that the east-side schools met constitutional requirements in "four of the six" areas: "student body, transportation, facilities, and extra-curricular activities.ROA.5731; *see Freeman*, 503 U.S. at 489 ("A federal court in a school desegregation case has the discretion to order an incremental or partial withdrawal of its supervision and control.").

The west-side schools, for their part, did not met constitutional requirements in any area. ROA.5730. The 1970 Order therefore modified

17

the 1969 Decree with an "alternative plan" for the west side. ROA.5732. The 1970 Order found that the plan would bring west-side schools into compliance with "the same [four] requirements" as the east-side schools—student assignment, transportation, facilities, and extra-curricular activities. *Id.*

For the two outstanding areas—"faculty and staff assignments"— the 1970 Order required that "all schools" on both sides "substantially" meet "the districtwide faculty ratio of 63.6% white and 36.4% black." ROA.5733. The 1970 Order declined "'full' implementation of *Singleton* [*v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1969)]" because "an acute teacher shortage in [this] district caused by various factors" made it "impossible." ROA.5731. Instead, the 1970 Order treated the east and west sides "separately" for purposes of *Singleton. Id.*

"Time [was] of the essence," so the 1970 called upon the Boudreauxes and Bourgeois "forthwith," but "in no event later" than four days, to "file" objections (if any) to the 1970 Order's "faculty and staff assignment" provisions. *Id.* If there were objections, Judge Putnam would hold an evidentiary hearing "as soon thereafter as possible." *Id.*

The Boudreauxes and Bourgeois again sought modification. ROA.5739 (Dkt. entry showing Aug. 28, 1970 Mot. Further Relief). In 1971, Judge Putnam fully applied *Singleton*. ROA.5756. Later that year, he issued an "Amended Judgment" (1971 Amended Judgment) directing the Board "to announce and implement the policies" therein for faculty and staff, majority-to-minority student transfers, out-of-district student transfers, transportation, and school construction and site selection. ROA.5757-59. The 1971 Amended Judgment was a supplement to "the judgment previously entered," which "remain[ed] in full force and effect." *Id.* By the end of the year, the Board had implemented the 1971 Amended Judgment's policies. ROA.5877.

### D. 1973-75: The Boudreauxes and Bourgeois Have No Objection to Dismissing the Case.

In 1973, the Boudreauxes and Bourgeois joined the Board's modification request to allow an "expansion program" needed "due to population growth," ROA.5978, and agreed the expansion program would not "adversely affect" "integration." *Id.* Judge Putnam agreed. *Id.*

Ten months later, Judge Putnam ordered the parties to meet and confer. ROA.6086. The Boudreauxes and Bourgeois were to "report to the Court in writing" within 45 days "whether or not the information" in the

19

Board's then-most-recent report or the meet-and-confer "trend[ed]" toward "re-establishment of a dual public school system" and whether the school system was "in compliance with the orders of th[e] court." *Id.* The Boudreauxes and Bourgeois raised no concerns.

In 1974, the Board sought modification to construct and renovate "certain school facilities" rendered "inadequate due to population growth." ROA.6132-33. The Boudreauxes and Bourgeois "ha[d] no objection to the proposed construction" and were "satisfied that the construction [would] not lead to the reestablishment of a dual school system." ROA.6137-38. Judge Putnam agreed. ROA.6132-33.

In 1975, Judge Putnam ordered another meet-and-confer "forthwith" over the Board's then-most-recent report. ROA.6225. Judge Putnam gave the Boudreauxes and Bourgeois 30 days to "file any and all objections that they may have to the operation of the public school system" and "to the proposed construction, the abandonment of school facilities set out therein, and any other matters pertaining to the operation of said system to which they may object." *Id.* "[I]n the absence of such objections," Judge Putnam would "declare said system unitary and direct that the matter be placed on the inactive docket." *Id.*

20

Declaring unitary status was the pre-*Dowell* standard for finding "conversion of a state-imposed dual [school] system to a unitary, non-racial system."[1] *Green*, 391 U.S. at 441. A "unitary" finding resulted in "a final judgment or [order] dismissing the entire case." *Pickens v. Okolona Mun. Separate Sch. Dist.*, 594 F.2d 433, 436 (5th Cir. 1979). And placing a case on the inactive docket was the equivalent of staying or administratively closing a case.[2] In other words, not only did the Boudreauxes and Bourgeois (as well as the people they purported to represent and USDOJ) decline the very "further relief" the 2019 Plaintiffs now seek, they had no problem with either the case-ending prospect of declaring unitary status or indefinitely staying this case.

### E.    1979-2016: The Boudreauxes and Bourgeois Remain Satisfied.

In 1979, the U.S. Office of Civil Rights conducted an on-site investigation of the Board's employee-promotion practices and found "no

---

[1] *Dowell* changed that. 498 U.S. at 245 ("We think it is a mistake to treat words such as 'dual' and 'unitary' as if they were actually found in the Constitution.").

[2] Moving a case to the "inactive docket" is the same as staying it. *See CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 251 (5th Cir. 2006) ("[S]ubstantive claims removed from the 'active docket,' by definition then resided on an 'inactive docket,'" which is "the same posture as an 'administratively closed' case."); *Ali v. Quarterman*, 607 F.3d 1046, 1049 (5th Cir. 2010) (describing an "administrative closure" as "equivalent to a stay").

intention on the part of District Administration to discriminate against Black employees." ROA.6509-13 (Investigative Report). The Office sent its Report to the court. ROA.6590. Judge Davis, newly assigned to the case, immediately "advis[ed]" the Office, the complainant employee and the Board's counsel that the court would take "no action … on this complaint unless a suit [was] instituted by the complainant." ROA.6596. That never happened.

In 1980 and 1981, the parties jointly sought modification to repair and expand schools and move "certain grades" to other schools in response "to population growth." ROA.6647, ROA.6753. The parties agreed that the modifications would not "adversely affect" "integration." *Id.* Judge Davis agreed, *id.*, and the case settled back into obscurity.

The Board continued filing bi-annual reports through the end of 1983. ROA.6764-6815 (Nov. 1981 biannual report); ROA.6816-67 (Apr. 1982 biannual report); ROA.6870-6924 (Dec. 1982 biannual report); ROA.6925-81 (Apr. 1983 biannual report); ROA.6983-7037 (Dec. 1983 biannual report). All without comment from the Boudreauxes, Bourgeois, purported class members, NAACP, and USDOJ.

Almost thirty years later (2012), Judge James, the newest judge on the matter, sua sponte entered final judgment of dismissal in light of the procedural history. ROA.1502-03 (Order); ROA.1504 (Judgment: "[T]he above-referenced matter is DISMISSED WITH PREJUDICE."). Days later, he sua sponte changed his mind. ROA.1505. Not even that brought back a single complainant. Dismissing with prejudice or restoring the case for "additional" factfinding, *id.*—all the same to them.

### F.    2016-24: USDOJ and NAACP Revive the Case.

In 2016, USDOJ "opened a compliance review" of the Board. ROA.1660. As USDOJ tells it: "In early 2016, [USDOJ] received multiple letters from concerned residents of St. Mary Parish regarding the Board's intent to close two additional elementary schools in the parish, including one of the parish's few remaining historically African-American schools." *Id.* The Board and USDOJ communicated over several months, and the Board "provided responses to [USDOJ's] requests for information." *Id.* USDOJ then "initiated contact with Plaintiffs' counsel," *id.*, none of whom represented the Boudreauxes or Bourgeois.

Two years later (2018), a local attorney, "move[d] that he be allowed to enroll as 'Trial Attorney' for the Boudreauxes[]" because "he desire[d]

to enroll as [their] 'Trial Attorney.'" ROA.1508. He then sought pro hac vice admission for NAACP lawyers in New York and Washington DC. ROA.1515-17.

In 2019, the Board moved to dismiss for lack of subject matter jurisdiction. ROA.1534-35 (Mot.); ROA.1536-60 (Memo). NAACP countered on behalf of "Private Plaintiffs" with a motion to replace the Boudreauxes and Bourgeois as "Named Plaintiffs" with a new group of parents. ROA.1646-49. The district court denied the Board's motion and granted NAACP's motion. ROA.1829-50 (Memorandum Ruling). The district court also was "of the opinion the class in this matter should be formally recertified"—a half-century after the Complaint. ROA.1849.

The court eventually "certifie[d]" a "class for injunctive relief pursuant to [Rule] 23(b)(2)" and described the "class claim" as a "violation of the class members' [Equal Protection] rights." ROA.2073. Class members are:

> (1) All Black students currently enrolled or who will in the future enroll in schools operated by the St. Mary Parish School Board; (2) all Black students who previously attended the foregoing schools and would remain eligible to attend such schools, but for the fact they were expelled from such schools due to discriminatory policies of the St. Mary Parish School Board; and (3) the custodial biological or custodial adoptive parents of the foregoing students.

24

ROA.2094.

Since then, the parties have engaged in six years of discovery—with pauses for COVID and unsuccessful negotiations—as directed by the scheduling order. *See, e.g.*, ROA.2001 (COVID); ROA.3397 (extending discovery "for settlement negotiations"). The case finally reached the "dispositive motions" stage last fall. ROA.4787.

### G.     2024-25: The District Court Declines to Follow the Federal Rules of Civil Procedure.

The Board filed its dispositive motion asking (a) to dismiss the Complaint for lack of Article III jurisdiction and (b) dissolve the Decrees under Rule 60(b)(5) (first and third clauses) or *Dowell*. ROA.4790-92 (Mot.); ROA.7491-7614 (Memo). The 2019 Plaintiffs filed a "Motion for Further Relief" not only opposing the Board's motion but cross-moving to expand the Decrees with unspecified "further [injunctive] relief." ROA.7825-27 (Mot.); ROA.7829-7942 (Memo). The Board opposed (ROA.8287-8356) and also cross-moved. ROA.8253-54 (Mot.); ROA.8255-84 (Memo) to (a) dismiss "this action or, at a minimum, the Motion for Further Relief" (ROA.8280) for lack of standing, failure to prosecute, or laches and (b) strike the Motion for Further Relief because the 2019

25

Plaintiffs expressly asked the district court "to reject" Rule 60(b)(5) as the standard governing their Motion. ROA.8255-84.

The district court then issued the January Bench Ruling (on appeal here) denying the Board's cross-motion. ROA.8556-8685 (Trans.). Every Rule of Civil Procedure or centuries-old equitable doctrine the Board invoked the court rebuffed, not on their merits, but as attempts to "cut corners." ROA.8623. "Wecl have to address the governing law," said the court, which by its lights can only be "a decision on unitary status [under *Dowell*]." ROA.8623, 8668. The district court later clarified that the January Bench Ruling had indeed denied the Board's cross-motion "in its entirety." ROA.8501. The Board timely appealed. ECF 1.

The 2019 Plaintiffs then asked the district court to clarify the scope of the upcoming hearing on the Board's dispositive motion. ROA.8506-07. The district court complied and issued the February Order (also on appeal here) barring the Board from pursuing at that evidentiary hearing its Rule 60(b)(5) arguments for dissolving the injunctions (raised in its dispositive motion). ROA.8513. The Board timely appealed the February Order. ECF 11. The appeals appear to have been consolidated.

26

## SUMMARY OF THE ARGUMENT

Subject matter jurisdiction has lapsed. The Boudreaux and Bourgeois children left St. Mary schools long before the 2019 certification under Rule 23. While Judge Putnam and the parties may have treated the case as a class action, the Supreme Court flatly rejected the idea of implied class certification. Instead, the Supreme Court recognizes an exception to pre-certification mootness for inherently transitory claims, which k-12 education is not. This case thus was moot when the last Bourgeois child graduated in the 1970s.

Alternatively, the Court should dismiss the action or, at a minimum, the Motion for Further Relief. The 2019 Plaintiffs lack standing, have failed to prosecute their claims, and are barred by laches. Even if they are implied class members, their forty-year delay in seeking this relief is more than long enough.

Finally, the Court should reverse the legal error of rejecting Rule 60(b)(5) as inapplicable to desegregation cases and the denial of the motion to strike. At a minimum, the Court should remand with instructions to apply Rule 60(b)(5) to the Motion for Further Relief and

allow the Board to pursue its Rule 60(b)(5) arguments at any upcoming evidentiary hearing.

## ARGUMENT

## I.   ARTICLE III JURISDICTION HAS LAPSED.

"Issues of subject matter jurisdiction are questions of law reviewed de novo." *Pershing, L.L.C. v. Kiebach*, 819 F.3d 179, 181 (5th Cir. 2016). So is "the district court's exercise of remedial jurisdiction." *Borel ex rel AL v. Sch. Bd. Saint Martin Par.*, 44 F.4th 307, 312 (5th Cir. 2022).

### A.   The Boudreauxes' and Bourgeois' Claims Are Moot.

There is an undisputed almost half-century gap between the Boudreauxes' and Bourgeois' 1970s departure from the St. Mary schools and the 2019 Plaintiffs' substitution and Rule 23 certification. ROA.1613-14. Those undisputed facts render the case moot—for decades.

**1.** "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 307 (5th Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Even in class actions, "[p]laintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion*, 594 U.S. at 431 (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008)). Courts are not to "dispens[e] standing

'in gross' in a class-action context" (or any context) but instead must "ensure that plaintiffs 'demonstrate standing for each claim they press and for each form of relief they seek[.]'" *Chavez*, 108 F.4th at 307 (quoting *TransUnion*, 594 U.S. at 431).

Purported class actions are "moot if no named class representative with an unexpired claim remain[s] at the time of class certification." *Nielsen v. Preap*, 586 U.S. 392, 403 (2019) (alteration in original) (quoting *United States v. Sanchez-Gomez*, 584 U.S. 381, 386 (2018)). "There must not only be a named plaintiff who has such a case or controversy at the time the complaint is filed" but also "at the time the class action is certified by the District Court pursuant to Rule 23." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). When the plaintiffs' claims "bec[o]me moot prior to [certification]," [t]here is simply no certification decision to which [their claims] could have related back." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

This bright-line jurisdictional rule requiring at least one named plaintiff to have live claims at the time of certification is well established. *See Sosna,* 419 U.S. at 399; *Gerstein v. Pugh*, 420 U.S. 103 (1975).

Rule 23, for its part, requires that a "court *must determine by order* whether to certify the action as a class action . . . [a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. (emphasis added). That order, in turn, "must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). That is because "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The certification seeker "affirmatively" must "'prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' and so on." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545-46 (5th Cir. 2020) (quoting *Dukes*, 564 U.S. at 350).

Rule 23(c)(1)(C) allows courts to "alter[] or amend[]" orders "that grant[] or den[y] class certification" at any time "*before judgment*." (emphasis added). This provision requires that a "district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983).

It is, of course, true that the version of Rule 23 in effect in 1965 did not "require[] that courts issue an order certifying whether a case could

properly proceed as a class action." ROA.1844. The next year, the Supreme Court amended Rule 23 "to include a mandatory requirement of class certification." *Jones v. Caddo Par. Sch. Bd.*, 704 F.2d 206, 212 (5th Cir. 1983), *on reh'g*, 735 F.2d 923 (5th Cir. 1984). For cases like this one that were "then pending" in 1966, the Supreme Court ordered that the new version of Rule 23 "shall govern … in all further proceedings … except to the extent that in the opinion of the [district] court their application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies." *Id.* (quoting Order of the Sup. Ct., 383 U.S. 1031 (1966)).

**2.** In 2019, Judge James' review of the record determined that there had never been "any express determination that it 'would not be feasible or would work injustice' to apply amended Rule 23" here. ROA.1867. Neither was there a pre-2019 "order retroactively certifying the class after the 1966 amendments to Rule 23 went into effect." *Id.* Rule 23's mandatory class certification requirement thus applies to this case.

Judge James attempted to satisfy that requirement and skirt the Supreme Court's moot-before-certification rule by applying the so-called "implied class certification doctrine" under *Graves v. Walton County*

*Board of Education*, 686 F.2d 1135 (5th Cir. 1982). ROA.1829-50. Judge

James found *Graves* "practically on all-fours" here:

> [A]lthough the case was never explicitly certified as a class action, it was in fact filed as a class action, defendants knew of the class nature of the action and acquiesced in it, the case proceeded to trial as a class action, and the case was regarded as a class action at all times by the district court.

ROA.1868. (citing *Graves*, 686 F.2d at 1138-39). So, "despite the lack of a

formal certification order," Judge James determined "this case is a class

action" and the Boudreauxes' and Bourgeois' exit from St. Mary schools

did not moot their claims. ROA.1870. Even so, he was "of the opinion the

class in this matter should be formally recertified" and would "set a

briefing schedule forthwith." ROA.1871. He then granted the 2019

Plaintiffs' substitution. *Id.*

Judge James ended that opinion by recognizing "factors

undercutting its decision" like "the failure of the parties and the Court to

expeditiously move this case to resolution," "the fact [USDOJ] has

appeared only as amicus, rather than as an intervenor," and "certain

dicta found in Supreme Court and [this Court's] opinions." ROA.1871-72.

He made his "best effort at applying the law to the facts of this case but

[was] cognizant that much of the pertinent caselaw is from times past,

and times (as well as jurisprudence) have changed," and invited this Court's review. *Id.*

The case later was reassigned to Judge Summerhays (current presiding judge), and he certified the case as a class action. ROA.2073.

**3.** Last year, the Board moved to dismiss for lack of Article III jurisdiction, this time arguing, through Rules 12 and 23, that the Supreme Court's "inherently transitory" exception governs pre-certification mootness. ROA.7539-43; *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction [under Rule] 12(b)(1)[] may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Fed. R. Civ. P. 12(h) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Fed. R. Civ. P. 23(c)(1)(C); *Richardson*, 709 F.2d at 1019.

Judge Summerhays in the January Bench Ruling "considered the inherently transitory exception," "the key cases that Judge James relied on," and ultimately declined to "revisit Judge James' ruling on class

certification." ROA.8683. The January Bench Ruling thus denied the Board's cross-motion. ROA.8683-84.

The district court's invocation of *Graves*' "implied class certification doctrine" is legal error that this Court should reverse de novo. This Court's views on the issue are conflicting:

| DATE | CASE | IMPLIED CLASS? | DESEGREGATION CASE? |
|------|------|----------------|---------------------|
| 1983 | *Graves*, 686 F.2d | YES: "[D]espite the lack of a formal order of class certification, this case was in fact a class action and was specifically described and treated as such by the parties and the trial court." *Id.* at 1140. | YES |
| 1981 | *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981) | NO: "Of course, a school desegregation case can become moot if it is not certified as a class action, the named plaintiffs have graduated from school, and there is no other factor which avoids mootness." *Id.* at 1106. | YES |
| 1973 | *Bing v. Roadway Exp.*, Inc., 485 F.2d 441 (5th Cir. 1973) | YES: "[W]e may infer that the trial court approved the class action nature of this lawsuit." *Id.* at 446. | NO |

34

Under the rule of orderliness, *Tasby*, 643 F.2d at 1106 is the earlier desegregation case and therefore controls. Three other circuits agree with *Tasby*'s approach. *See Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 345 (3d Cir. 2003) (Alito, Weis, Garth, JJ.) ("[N]o implied class certification doctrine can take the place of, or be deemed a substitute for, an appropriate grant of class certification."); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) ("[T]he Fourth Circuit has never allowed the rigorous Rule 23 analysis to be accomplished implicitly."); *Davis*, 321 F.3d at 649 ("Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions.").

More importantly, *Tasby* follows Supreme Court precedent. A class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," and "actual, not presumed, conformance with Rule 23(a) remains ... indispensable." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982). In 1975 and 1976, the Supreme Court decided a pair of cases practically on all fours here: *Board of School Commissioners of*

35

*Indianapolis v. Jacobs*, 420 U.S. 128 (1975) (per curiam), and *Pasadena City Board of Education v. Spangler*, 427 U.S. 424 (1976). These cases dictate that this case is moot.

In *Jacobs*, six high school students brought a class action seeking declaratory and injunctive relief from school policies claimed to violate their First and Fourteenth Amendment rights. 420 U.S. at 128-29. The district court "purport[ed] to certify" the case "as a class action" in one sentence. *Id.* at 129-30. The students then prevailed on the merits, and the court of appeals affirmed. *Id.* at 130.

The Supreme Court granted cert. *See Bd. of Sch. Comm'rs of the City of Indianapolis v. Jacobs*, 417 U.S. 929 (1974). "At oral argument," the Supreme Court learned that "all of the named plaintiffs in the action had graduated from the Indianapolis school system[.]" *Jacobs*, 420 U.S. at 129. "[I]n these circumstances," the Court was "clear that a case or controversy no longer exist[ed] between the named plaintiffs and [the school board] with respect to the validity of the [school] rules at issue." *Id.* "The case [was] therefore moot *unless*" three requirements were satisfied: (1) the district court's order had "duly certified [the case] as a class action pursuant to [Rule] 23," (2) "a controversy still exist[ed]

36

between [the school board] and the present members of the class," and (3) "the issue in controversy [was] such that it was capable of repetition yet evading review." *Id.* (emphasis added) (citing *Sosna*, 419 U.S 393).

The Supreme Court concluded that the students failed at step one and ended its analysis there: "Because the class action was never properly certified nor the class properly identified by the District Court, the judgment of the Court of Appeals is vacated and the case is remanded to that court with instructions to order the District Court to vacate its judgment and to dismiss the complaint." *Id.* at 130.

In *Spangler*, the Supreme Court extended *Jacobs* to the desegregation context. The question in *Spangler* was whether "the case [was] moot" because "all the original student plaintiffs ha[d] graduated from the Pasadena school system" and the district court had "never certified this suit as a class action pursuant to [Rule] 23." 427 U.S. at 430.

*Spangler* flatly rejected the idea that a class action can exist by implication. It mattered not that the case had been "filed as a class action," that "all the parties ha[d] until [then] treated it as a class action," or even that "a class of unnamed individuals still attending the Pasadena Schools who [had] some substantial interest in the outcome of the

litigation[.]" *Id.* "[T]he failure to obtain the class certification required under Rule 23" was much more than "the absence of a meaningless 'verbal recital'" that had "no effect on the facts of this case." *Id.* To hold otherwise would "overlook the fact that the named parties whom counsel originally undertook to represent in this litigation no longer ha[d] any stake in its outcome." *Id.* "As to them the case [was] clearly moot." *Id.*

The Supreme Court dismissed the private plaintiffs from the case. *See id.* at 431 (allowing "the United States to continue as a party plaintiff in this action, despite the disappearance of the original plaintiffs"). "Except for the intervention of the United States," the whole case "would clearly [have been] moot." *Id.* at 430 (citing *Jacobs*, 420 U.S. 128; *Sosna*, 419 at 393).

Lest there be any doubt, the Supreme Court's well-established inherently transitory exception puts the nail in the coffin of the implied class certification doctrine. In 1975, the Supreme Court identified that "[t]here may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion." *Sosna*, 419 U.S. at 402 n.11.

One month later, the Supreme Court made *Sosna*'s dicta the law. *See Gerstein*, 420 U.S. 103. The detention of the *Gerstein* plaintiffs— purported "members of a class of persons detained without a judicial probable cause determination—"ordinarily" would have been "moot as to them before the district court [could] reasonably be expected to rule on a certification motion." *Id.* at 110 n.11. And voilà, the "inherently transitory" exception to precertification mootness was born. *Id.*

**4.** In the decades since *Sosna* and *Gerstein*, the Supreme Court over and again has confirmed that the "inherently transitory" exception is the proper framework for deciding whether a court has jurisdiction to certify a class after the named plaintiffs' claims are moot. The current formulation of the rule is that "a court has Article III jurisdiction to certify a class action when the named plaintiffs' claims have become moot if"—and only if—"the claim is 'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" *Nielsen*, 586 U.S. at 426 (Thomas, J, joined by Gorsuch, J., concurring in part and concurring in the judgment) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980)).

39

"While neither the Supreme Court nor this [C]ourt has provided detailed guidance as to what makes a claim 'inherently transitory,'" the Supreme Court "suggests" four "factors": (1) "the challenged conduct giving rise to the claim is of a fleeting or temporary nature"; (2) "uncertainty exists at the outset as to the duration of each plaintiff's exposure to the allegedly harmful conduct"; (3) "it is unlikely that any given individual plaintiff could see his claim to fruition prior to the claim becoming moot"; and (4) "there exists a constant group of people suffering the harm alleged by the plaintiffs." *Ward v. Hellerstedt*, 753 F. App'x 236, 242 (5th Cir. 2018) (citing *Genesis Healthcare*, 569 U.S. at 76; *Gerstein*, 420 U.S. at 110 & n.11).

The challenged conduct here—compulsory biracial k-12 education—is nowhere close to satisfying those factors. So much so that the 2019 Plaintiffs affirmatively disclaimed the exception. *See* ROA.8409 n.41 ("never claim[ing] to be proceeding on this capable-of-repetition yet evading review theory").

*Jacobs*, *Spangler*, and *Falcon* thus control. Under that framework, the Boudreauxes' and Bourgeois' claims have been moot for decades. The 1965 Board's stipulation changes nothing. ROA.4842.

40

*For one*, "the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). So even though the Board "stipulated to [class] certification," Judge Putman "was bound to conduct [his] own thorough rule 23(a) inquiry." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002); *accord Davis*, 321 F.3d at 649 ("Rule 23(c) imposes an independent duty on the district court … regardless of the defendant's admissions.").

*For another*, the stipulation spoke only to the legal effect of the admitted numerosity fact—that "plaintiffs" were "under the law entitled to bring this suit as a class action." ROA.4842; *Marden v. Int'l Ass'n of Machinists & Aerospace Workers*, 576 F.2d 576, 580 (5th Cir. 1978) ("[A] court is free to disregard stipulations if parties have spoken to 'the legal effect of admitted facts . . . since the court cannot be controlled by agreement of counsel on a subsidiary question of law.'" (quoting *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 288-89 (1917))).

*For yet another*, the certification analysis requires adequate representation to protect the Due Process rights of "absent class members." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). "While class stipulations by the parties may be helpful, they are not

complete substitutes for 'rigorous analysis.' The purpose of this analysis is to protect unknown or unnamed potential class members, and by definition those people do not and cannot participate in any stipulations concocted by the named parties.'" *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 480 n.8 (5th Cir. 2001) (quoting *Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986)).

*For another still*, one Louisiana school board cannot bind future boards. *See Golden v. Dirs. of Pub. Sch. of New Orleans*, 34 La. Ann. 354, 356-57 (1882) (calling it "extraordinary and anomalous" that one school "board" can "bind[] irrevocably the action of their successors in office").

At bottom: "Because the class action was never properly certified nor the class properly identified by the District Court" before the Boudreauxes and Bourgeois exited the St. Mary schools, this Court should "remand[]" to the district court "with instructions … to vacate its [order] and to dismiss the complaint." *Jacobs*, 420 U.S. at 130.

### B.     The Boudreauxes' and Bourgeois' Claims Are Satisfied.

The Boudreauxes' and Bourgeois' "personal claims" were "satisfied prior to certification" in 2019, leaving no "Article III 'case or controversy' for the court to resolve." *Ward*, 753 F. App'x at 241 (quoting *Murray v.*

*Fid. Nat'l Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010)). By 1983 (if not before), the Boudreauxes and Bourgeois had achieved what they set out to do: dismantle the "compulsory biracial school system" in St. Mary Parish. ROA.4817. They received all the relief their Complaint requested (and more). *Compare* ROA.4816-23 (Compl.), *with* ROA.4848-50 (1965 Decree); ROA.5064-78 (*Jefferson* Decree); ROA.5730-33 (1970 Order); ROA.5757-59 (1971 Amended Judgment); *see also* ROA.5209 (Judge Putnam at Jan. 29, 1968 hearing stating they "had been given all of the relief they [sought]").

In 1975, they relinquished any claim to further relief, did not object to ending the case, let the case be stayed indefinitely, and left it that way for forty years. *See supra* at 25-31 & n.2. The only logical explanation is that they were satisfied with the relief received. Remember, NAACP was their counsel and had repeatedly sought modification on their behalf— often within months of a decree's issuance. *See* ROA.5209 (describing "every three months" as "pretty rapid" to seek expansion "of an order of this nature"). Even if the Boudreauxes and Bourgeois authorized the

revival of this case in 2018,[3] for forty-four years—from 1975 to 2018—they had zero complaints.

Had the Boudreauxes, Bourgeois, or NAACP believed in 1975 or 1983 that the Court had not afforded all the relief to which they were entitled, they would have done something about it as they had so frequently done before. *See id.* When they stopped seeking modification, it was not by mistake or neglect. The Boudreauxes' and Bourgeois' claims were satisfied by 1983 at the latest and thus no longer supply an Article III controversy. *Ward*, 753 F. App'x at 241 (quoting *Murray*, 594 F.3d at 421).

## II.    THE 2019 PLAINTIFFS' REQUESTS SHOULD BE DISMISSED.

Where to begin with the procedural bars to what the 2019 Plaintiffs seek: they (a) lack standing to enforce or modify Judge Putnam's decrees,

---

[3] The record raises questions about whether Claude, Gwen, or Bruce Boudreauxes actually authorized the local attorney who, in 2018, claimed "to enroll as 'Trial Attorney' for the Boudreauxes plaintiffs." ROA.1508. His one-paragraph motion very carefully states that "*he* desire[d] to enroll" and that *he* so "move[d]." *Id.* (emphasis added). It would not be the first time the NAACP has used that same local attorney to revive a Louisiana desegregation case on behalf of a purported "Plaintiff Class" without authorization from the "class representatives." *See Duhon v. Tatje*, No. CV 90-1669, 2024 WL 4818269, at *6 (E.D. La. Nov. 18, 2024) ("The Court is not persuaded that the [NAACP Legal Defense Fund] … has the authority to seek coercive relief against the Board in the name of persons … who obtained the relief that they sought decades ago but who are no longer before the Court. If any of those original plaintiffs are alive and could be located, it is far from clear that they would satisfy the requirements of Article III standing.").

(b) lack standing to plead new claims for injunctive relief, (c) have failed to state a claim under Rule 12(b)(6), (d) have failed to prosecute their claims under Rule 41(b), and (e) have unreasonably delayed seeking relief under the laches doctrine.

### A.   The 2019 Plaintiffs Lack Standing to Enforce or Modify Judge Putnam's Decrees.

"Despite the constitutional importance of curing the [original] injury" in desegregation cases, "the federal judiciary may not redress it unless standing requirements are met." *Allen v. Wright*, 468 U.S. 737, 756 (1984). At all times, the 2019 Plaintiffs must demonstrate standing "with the manner and degree of evidence required at successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). And they must make that showing "for each claim they press and for each form of relief they seek." *TransUnion*, 594 U.S. at 431. Without proof of all three elements at each successive stage, "there is no case or controversy for the federal court to resolve." *Id.* at 423 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)).

The 2019 Plaintiffs joined this case "to assist[] the Board with finally curing its" "violation" of the Boudreauxes' and Bourgeois'

"constitutional" rights." ROA.7861. As "committed" to that effort as they may be, *id.*, they lack "standing" to "assert a violation of" anyone's "rights" but their own. *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 10 (2023) (Thomas, J., concurring in judgment). For they have no legally cognizable personal interest in Judge Putnam's decrees. So whether they seek to enforce those decrees as written (not what they want) or expand them under Rule 60(b)(5), they lack standing.

*Enforcement*: The 2019 Plaintiffs lack "the 'invasion of a legally protected interest'" necessary for standing. *Pederson v. La. State Univ.*, 213 F.3d 858, 870-71 (5th Cir. 2000) (quoting *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663 (1993)). Only the "party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment." *Salazar v. Buono*, 559 U.S. 700, 712 (2010) (quoting *Allen*, 468 U.S. at 763). "[P]laintiffs' right to enforce a desegregation decree to which they were parties is 'a personal interest, created by law, in having the State refrain from taking specific actions," *i.e.*, obey the decree's injunctions. *Id.* (quoting *Allen*, 468 U.S. at 763).

Here, that "legally protected interest," *Pederson*, 213 F.3d at 870-71 (quoting *City of Jacksonville*, 508 U.S. at 663), or "'judicially cognizable' interest," *Salazar*, 559 U.S. at 712 (quoting *Allen*, 468 U.S. at 763) belongs exclusively to the Boudreauxes and Bourgeois. *They* were the parties who obtained a judgment in *their* favor "granting relief on [*their*] claims." *Id.* That interest is "personal" to them. *Id.*; *Allen*, 468 U.S. at 763.

Before 2019, the 2019 Plaintiffs were (at best) future members of a not-yet-certified class action. Again, "a nonnamed class member is [not] a party to the class-action litigation *before the class is certified*." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (emphasis and alteration in original) (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011)). "After all, if there is no class action under Rule 23, then there are no unnamed class members in the suit[.]" *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020). This cannot confer standing.

*Expansion*: Before considering whether to modify institutional-reform injunctions, courts are to consider "the threshold issue" of whether the party seeking modification has "standing." *Horne v. Flores*, 557 U.S. 433, 445 (2009). In *Horne*, the Supreme Court "agree[d]" that

47

the superintendent had standing to seek modification "because he '[was] a named defendant in the case[,]'" the liability judgment "held him in violation" of the law, and the "injunction [ran] against him." *Id.* (quoting *Flores v. Arizona*, 516 F.3d 1140, 1164 (9th Cir. 2008)). "For these reasons alone," the superintendent had "a sufficiently 'personal stake'" in the injunction "to support [his] standing" to modify it. *Id.* at 445-46 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Likewise, a "named" plaintiff "in the case" who wins a liability "judgment" holding the defendant "in violation" of the plaintiffs' rights and an "injunction" running against the defendant has "standing" to seek modification of that injunction. *Id.* at 445-46. Here, only the Boudreauxes and Bourgeois fit that description prior to 2019.

## B.   The 2019 Plaintiffs Lack Standing to Bring New Claims for Injunctive Relief and Have Failed to State a Claim for Relief under Rule 12(b)(6).

Even if the 2019 Plaintiffs were implied members of an implied class before 2019, membership alone would not get them the expansion they seek. That is because what they want is "relief" that was available before 2019, and the Boudreauxes' and Bourgeois' decisions were binding on the "Plaintiff Class"—unless they were inadequate representatives.

48

*See Baylor v. U.S. Dep't of Hous. & Urb. Dev.*, 913 F.2d 223, 223 (5th Cir. 1990) ("Because the unnamed class members have failed to allege that their class representation was inadequate, they remain bound by their named class representatives.); *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1058 (5th Cir. 1979) ("[T]he law is clear that a class member cannot be bound to a judgment in which he was not adequately represented by the class representative."). The 2019 Plaintiffs make no such allegation.

Rather, they rely on a line of precedent—"*Swann* and its progeny," ROA.6225; *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971)—first decided in 1971—the same year as the 1971 Amended Judgment (ROA.5757-59) and four years before the Boudreauxes and Bourgeois declined to seek further modification or otherwise keep the case going—and stretching throughout the decades that the Boudreauxes and Bourgesois represented the "Class."

Also in their "undo what the Boudreauxes and Bourgeois did" category of relief are pre-2019 "violations" of the decrees. *See* ROA.7871-73 (building "two brand new schools" in 1999, "closing" a school in 2016, failing to offer "M-to-M transfers" "until approximately 2019," and "ignor[ing] the bi-annual reporting requirement" since 1983).

49

But when these developments occurred, the 2019 Plaintiffs did not seek intervention. *See Hines v. Rapides Par. Sch. Bd.*, 479 F.2d 762, 765 (5th Cir. 1973) (""[T]he proper course for parental groups," like the 2019 Plaintiffs, that "seek[] to question current deficiencies in the implementation of desegregation orders is for the group to petition the district court to allow it to intervene."). Nor did they not seek Rule 60(b)(5) relief (standing issues aside). *See Jackson v. DeSoto Par. Sch. Bd.*, 585 F.2d 726, 730 n.1 (5th Cir. 1978) ("[T]o secure a modification of the plan," "[t]he plaintiffs might have moved under Rule 60(b)(5)" "for relief from the prior judgment on the grounds that it 'is no longer equitable that the judgment should have prospective application.'").[4] And now they've gotten the district judge to toss Rule 60(b)(5) out entirely. *See* ROA.7862; ROA.8513.

They thus have declined every procedure that would allow them to revisit the Boudreauxes' and Bourgeois' decisions. But that does not leave them without judicial recourse. They always can plead new Equal Protection claims—which they appear to do when they claim the Board's

---

[4] Whether or not they could meet the requirements of these options when "*Swann* and is progeny" were decided, schools were built or closed, and M-to-M transfers and biannual reports were not happening, they at least needed to try.

"response to recent incidents and/or allegations of racism" (allegedly from 2016 and later) was "discriminatory" in its own right. ROA.7876-79. But claims are pleaded in a Complaint (governed by a different set of procedural rules), not by motion. *See, e.g.*, *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *Adegbenro v. Bank of Am., N.A.*, No. 4:22-CV-00828, 2023 WL 4275507, at *7 (S.D. Tex. June 12, 2023) (disregarding "unpleaded discrimination theory" for failure "to plead" it "in his Complaint" or "seek leave to amend his complaint to include this belated theory or demonstrate good cause for permitting him to do so"), *report and recommendation adopted*, No. 4:22-CV-00828, 2023 WL 4275012 (S.D. Tex. June 27, 2023).

In all events, their claims are doomed. They lack standing to plead new claims under the guise of the Boudreauxes' and Bourgeois' Complaint and have failed to state a claim under Rule 12(b)(6).

In "school desegregation cases," it is a "basic equal protection principle that the invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory

purpose." *Washington v. Davis,* 426 U.S. 229, 240 (1976). "To state a claim of racial discrimination under the Equal Protection Clause," the 2019 Plaintiffs "must allege and prove" that (a) they "received treatment different from that received by similarly situated individuals" and (b) "the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (alteration omitted) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)).

The 2019 Plaintiffs do not allege (and cannot prove) that any of the Board's actions or inactions for which they seek further relief were intentionally discriminatory and do not show how the Board's responses here compare with its responses to other similarly situated individuals. That omission fails to establish an injury-in-fact and to state a claim under Rule 12(b)(6). *Washington,* 426 U.S. at 240; *Fennell*, 804 F.3d at 412.

Their allegations also have a traceability problem. The current racial statistics and allegedly discriminatory "response" from the Board cannot be fairly traced to any intentionally discriminatory act of the Board. *Washington,* 426 U.S. at 240. The closest they get to showing

traceability is alleging "[u]pon information and belief" that the Board "has maintained racially identifiably white student populations at these schools" "ever since." ROA.7880. That "information and belief" pleading standard outs their "Motion for Further Relief" for what it really is—a procedurally improper attempt at amending the Boudreauxes' and Bourgeois' Complaint.

Also, "[t]hat there are both predominantly black and predominantly white schools in a community is not alone violative of the Equal Protection Clause. The essential element of *De jure* segregation is 'a current condition of segregation resulting from intentional state action.'" *Washington*, 426 U.S. at 240 (quoting *Keyes v. School Dist. No. 1*, 413 U.S. 189, 205 (1973)). No doubt the Board (following state law) was liable for intentional segregation in 1965. But the 2019 Plaintiffs cannot fairly trace any "current condition" or "response" for which they seek relief to any "intentional state action," past or present. *Id.* (quoting *Keyes*, 413 U.S. at 205).

Their allegations also fail on redressability. They cannot trace the alleged discriminatory "incidents" or current racial percentages back to any board practice or policy, so an order implementing corrective board

practices or policies would not redress their injury. "Relief that does not remedy the injury suffered"—which in this case can only be intentional racial discrimination—"cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

### C. The 2019 Plaintiffs Have Failed to Prosecute and Are Barred by Laches.

By insisting they are members of the implied "Plaintiff Class," the 2019 Plaintiffs collide with a different set of procedural bars. The "Class" has failed under Rule 41(b) to prosecute its claims and unreasonably delayed seeking relief under the laches doctrine. The Board moved to dismiss "this action or, at a minimum, the Motion for Further Relief" for either reason. ROA.8280. The January Bench Ruling summarily denied both arguments without much explanation. ROA.8556-8685.

If the district court rejected Rule 41(b) and laches as "cut[ting] corners" off *Dowell*'s "governing law" for "unitary status," ROA.8623, this Court can and should reverse that underlying error of law on de novo review. *See In re Ryan*, 88 F.4th 614, 628 (5th Cir. 2023) (reviewing "decision concerning the availability of laches de novo, any relevant factual findings for clear error, and its fact-specific application of laches

for an abuse of discretion"); *Jumbo v. Mobil Oil Corp.*, 981 F.2d 1256 (5th Cir. 1992) ("In reviewing a Rule 41(b) dismissal, … conclusions of law are subject to de novo review" and findings of fact" for clear[] erro[r]"). There is no desegregation exception to the Federal Rules of Civil Procedure or generally applicable equitable doctrines.

The district court also abused its discretion in denying Rule 41(b) and laches based on the "Class's" decades of inaction and delay. *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 844 (5th Cir. 2018) (reviewing overall "Rule 41(b)" determination for "abuse of discretion"); *In re Ryan*, 88 F.4th at 628 (same for laches). The fact that the Board raised Rule 41(b) and laches after "five years of litigation" does not change this outcome. ROA.4787 (dispositive motions due Sept. 30, 2024).

Under either doctrine, the procedural history here is undisputed and bars the "Class" from doing now what it declined to do for decades.

**Rule 41(b)**: "[A] defendant may move to dismiss the action or any claim against it" when "the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b). Courts also have "inherent power to dismiss [a] case *sua sponte* for failure to prosecute." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). Such

"power" "is necessary in order to prevent undue delays in the disposition of pending cases" and "is of ancient origin." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (internal citation omitted) (citing 3 Blackstone, Commentaries 295-96 (1768)).

Rule 41(b) dismissals can be with or without prejudice. A "dismissal *with* prejudice is a severe sanction," *Campbell v. Wilkinson*, 988 F.3d 798, 801 (5th Cir. 2021) (emphasis added), that requires "egregious and sometimes outrageous delays," *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982) (citing *Delta Theatres, Inc. v. Paramount Pictures, Inc.*, 398 F.2d 323 (5th Cir. 1968)). A dismissal *without* prejudice is a different story—"a less stringent" standard" applies "because the plaintiff would be able to file his suit again." *Smith v. Bogalusa City*, No. 23-30707, 2024 WL 1156536, at *2 (5th Cir. Mar. 18, 2024) (quoting *Boazman v. Econ. Lab'y, Inc.*, 537 F.2d 210, 212-13 (5th Cir. 1976)).

A "delay which warrants dismissal *with* prejudice must be longer than just a few months;" it "must be characterized by 'significant periods of total inactivity.'" *John v. Louisiana*, 828 F.2d 1129, 1131 (5th Cir. 1987) (emphasis added) (quoting *Morris v. Ocean Sys.*, 730 F.2d 248, 252

(5th Cir. 1984)). Insufficient is a "few month's aggregate delay," *John*, 828 F.2d at 1131, or "[o]nly eight months," *Morris*, 730 F.2d at 252.

But where plaintiffs take "no action" "for one year and three months," a court is "fully authorized to dismiss the action" with prejudice. *Salmon v. City of Stuart*, 194 F.2d 1004, 1004 (5th Cir. 1952). In *Delta Theatres*, the case was "fourteen year[s] old" and was dismissed under Rule 41(b) because it had been "dormant for seven [of those] years." *Rogers*, 669 F.2d at 321 (discussing *Delta Theatres*, 398 F.2d 323). Such delays "threaten[] the integrity of the judicial process, often to the prejudice of the defense, leaving the court no choice but to deny that plaintiff its benefits." *Id.*

Under any metric, the "Plaintiff Class" has more than failed to prosecute under Rule 41(b). In 1975, the "Class" passed on seeking further modifications. ROA.6225. It is undisputed that, from 1975 to 2019, the "Plaintiff Class" never sought the relief it now seeks. That delay so far exceeds the periods that this Court has held constitute failure to prosecute that declining to follow this Court's clear precedent is an abuse of discretion.

**Laches**: "It is well established that laches, a doctrine focused on one side's inaction and the other's legitimate reliance, may bar long-dormant claims for equitable relief." *City of Sherrill v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 217 (2005). "The principle that the passage of time can preclude relief has deep roots in our law[.]" *Id.* (citing *Badger v. Badger*, 2 Wall. 87, 94 (1865); *Wagner v. Baird*, 7 How. 234, 258 (1849)); *see also Bowman v. Wathen*, 1 How. 189, 194 (1843) ("chancellors of England and Ireland" were originators).

"Historically, 'laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation.'" *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 271 (5th Cir. 2020) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 687 (2014)). Laches "gap-fill[s]" statutes to prevent equitable claims from becoming themselves inequitable due to "prejudicial delay." *Id.* (quoting *Petrella*, 572 U.S. at 680).

The "Class" here is equitably barred by the doctrine of laches because it (a) "delayed in asserting the rights at issue," (b) "the delay is inexcusable," and (c) the Board has "suffered undue prejudice as a result

58

of the delay." *Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251, 256 (5th Cir. 2016). The procedural history set forth above conclusively establishes that the "Class" "delayed in asserting the right at issue,"—both objections to restoring local control as well as expansion requests—for a half-century (1975 to 2024). *Uptown*, 817 F.3d at 256.

The only "excus[e]" for the delay, *id.*, the "Class" offered below was that it had no responsibility to do anything after proving the Board's liability, ROA.8413. By its lights, the "Class" could sit on its hands for fifty years without consequence because "the onus is not—and has never been—on the Plaintiff Class to … cure [the Board's] constitutional violation." *Id.* Wrong. "Laches certainly operates to bar the resurrection of stale claims where many years have gone by and the law's demands in public school desegregation have materially changed." *Henry v. Clarksdale Mun. Separate Sch. Dist.*, 579 F.2d 916, 928 (5th Cir. 1978); *Liddell ex rel. Liddell v. Bd. of Educ. of City of St. Louis*, 142 F.3d 1103, 1106 (8th Cir. 1998) (same); *Pegues v. Morehouse Par. Sch. Bd.*, 632 F.2d 1279, 1282-83 & n.4 (5th Cir. 1980) (remanding for the district court to apply the "laches inquiry [as] the proper manner" "to deal with the tardiness of [a] suit" over a Black coach's demotion resulting from "an

59

overall desegregation-related reduction in the number of school staff members").

The Board has "suffered undue prejudice as a result of" the "Class's" decades-long "delay." *Uptown*, 817 F.3d at 256. "Prejudice, in the laches context, means disadvantage in asserting and establishing a claimed right or defense, or other damage caused by detrimental reliance on the plaintiff's conduct." *Pegues*, 632 F.2d at 1283 n.5.

For ten years (1965 to 1975), the "Class" consistently sought modification in a matter of weeks or months. *See* ROA.5209; ROA.4861; ROA.5137; ROA.5645; ROA.5739. And then, the "Class" declined to keep going, even when prompted by Judge Putnam. *See* ROA.6225.

To its detriment, the Board relied on the "Class's" next half-century of inaction to go about business as usual—building schools (1999), closing schools (2016), curtailing race-based student transfers, and generally avoiding intentional consideration of race as otherwise required by the Fourteenth Amendment. *Compare* ROA.7871-73 (2019 Plaintiffs: claiming those actions are "violations"), *with Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.* (*SFFA*), 600 U.S. 181, 204 (2023) ("[N]o State has any authority under the equal-

protection clause of the Fourteenth Amendment to use race as a factor in affording educational opportunities among its citizens." (quoting Tr. of Oral Arg. in *Brown v. Bd. of Educ.* (*Brown I*), 347 U.S. 483 (1954), O. T. 1952, No. 8, p. 7 (Robert L. Carter, Dec. 9, 1952))); *Price v. Austin Indep. Sch. Dist.*, 945 F.2d 1307, 1314 (5th Cir. 1991) (explaining the end of a desegregation case "means that a school board is free to act without federal supervision so long as the board does not purposefully discriminate; only intentional discrimination violates the Constitution" (quoting *United States v. Overton*, 834 F.2d 1171, 1175 (5th Cir. 1987)).

Turning equity on its head, the "Class" now claims that the very actions the Board took relying on the "Class's" own "inaction" are violations of the decrees that warrant further injunctions against the Board. *City of Sherrill*, 544 U.S. at 217; ROA.7871-73. That is the epitome of inequitable conduct. The Court should "bar" the 2019 Plaintiffs' "long-dormant claims for equitable relief." *City of Sherrill*, 544 U.S. at 217.

This Court should reverse the district court's denial of the Board's dismissal arguments under Rule 41(b) and laches. At a minimum, because the district court denied those issues with minimal explanation, the Court should remand for the limited purpose of making those

61

determinations. *See Pegues*, 632 F.2d at 1283 ("As a general rule, the laches determination should be made by the trial court in the first instance."); *Lee v. Delta Airlines, Inc.*, 988 F.2d 1209 (5th Cir. 1993) (remanding "to make findings consistent with Rule 41(b)").

## III.   RULE 60(B)(5) APPLIES HERE.

The district court's resounding rejection of Rule 60(b)(5)—both to expand and dissolve the injunctions—is legal error that this Court should reverse on de novo review. *Frew v. Janek*, 780 F.3d 320, 326 (5th Cir. 2015) (reviewing overall "decision to grant or deny relief pursuant to Rule 60(b) for abuse of discretion" and "review[ing] de novo 'any questions of law underlying the district court's decision.'" (quoting *Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006)).

The district court also abused its discretion in effectively denying the Board's Rule 60(b)(5) arguments for dissolving the injunctions, *see id.*, and in denying the Board's motion to strike the 2019 Plaintiffs' arguments for expanding the injunctions, *see Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020) (reviewing "a motion to strike for abuse of discretion"). And "[b]ecause [this Court] review[s] conclusions of law de novo, this case does not require the deference normally associated with

abuse-of-discretion review." *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) (internal citation omitted).

"Rule 60(b)(5) serves a particularly important function" in "institutional reform litigation." *Horne*, 557 U.S. at 447; *accord Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 380 (1992)). Institutional-reform decrees (like this one) "often remain in force for many years, and the passage of time frequently brings about changed circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination of the original judgment." *Id.* at 447-48. There is no question that desegregation cases are institutional-reform cases.[5]

Here, Rule 60(b)(5) governs the 2019 Plaintiffs' expansion request *and* the Board's dissolution request. The "label" those motions bear is irrelevant; their substance governs. *United States v. One 1988 Dodge*

---

[5]  *Horne* Majority: *See Horne*, 557 U.S. at 448 (quoting *Missouri v. Jenkins*, 515 U.S. 70, 99 (1995)); *id.* (quoting *Jenkins*, 515 U.S. at 131 (Thomas, J., concurring)); *id.* at 455 (quoting *Jenkins*, 515 U.S., at 131 (Thomas, J., concurring)); *id.* at 470–71 (citing *Jenkins*, 515 U.S., at 89–90 (maj. op.)).

*Horne* Dissent: *See id.* at 491 (Breyer, Stevens, Souter, Ginsburg, JJ., dissenting) (quoting *Dowell*, 498 U.S. at 249); *id.* at 492 (discussing "*Dowell*"); *id.* at 495 (comparing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004) as "like *Dowell*"); *id.* (discussing *Milliken v. Bradley*, 433 U.S. 267, 269 (1977)); *id.* at 496 (citing *Dowell,* 498 U.S. at 240–41)); *id.* at 502 (quoting *Dowell*, 498 U.S., at 249)).

*Pickup*, 959 F.2d 37, 39 (5th Cir. 1992). And because they each seek "modifying a permanent injunction that has prospective effect, regardless of whether the modification expands restrictions or eliminates restrictions in the injunction," Rule 60(b)(5) "is the appropriate vehicle." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008); *accord Hendrick v. Avent*, 891 F.2d 583, 588 (5th Cir. 1990) (explaining that "Rule 60(b) motion[s]" are "intended to be the only method," beyond appeal, "of attacking a final judgment" or other permanent relief); *see also Jackson*, 585 F.2d at 730 n.1 (recommending in a desegregation case that that "plaintiffs" "might have moved under Rule 60(b)(5)" "for relief from the prior judgment" because they sought "a modification of the plan").

Yet the 2019 Plaintiffs asked the district court to categorically "reject" Rule 60(b)(5) and instead apply *Dowell* as the only standard for modifying injunctions in desegregation cases. ROA.7862. But *Dowell* explicitly says that it is the standard "to allow the injunction to be *dissolved*." 498 U.S. at 249. So even if the 2019 Plaintiffs could disprove *Dowell*, that would defeat dissolution, not give them expansion.

The court offered no explanation for rejecting Rule 60(b)(5)—other than its general "unwilling[ness] to cut corners" and apparent rejection

of Rule 60(b)(5) as not "the governing law." ROA.8623. Such a drastically incorrect position warrants an equally "drastic" response. *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). The 2019 Plaintiffs' adamant rejection of Rule 60(b)(5)—the only standard that can give them expansion, *Baum* 513 F.3d at 190—not only dooms their request but also leaves it with "no possible relation to the controversy." *Id.* (quoting *Brown & Williamson*, 201 F.2d at 822). Striking their request is therefore "required for the purposes of justice." *Id.* (quoting *Brown & Williamson*, 201 F.2d at 822). The rejection of Rule 60(b)(5) also constitutes very forceful waiver. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (waiver is intentional relinquishment or abandonment of a known right); *Liddell*, 142 F.3d at 1106 (desegregation case applying waiver).

For any of these three reasons, if the Court does not dismiss, it should (a) reverse the January Bench Ruling's denial of the strike motion or, at a minimum, (b) remand with instructions that the district court (c) apply Rule 60(b)(5) to the 2019 Plaintiffs' expansion motion and

(d) allow the Board to pursue its Rule 60(B)(5) arguments at any upcoming evidentiary hearing.

## CONCLUSION

Subject matter jurisdiction has lapsed, and the Court should dismiss. Alternatively, the Court should dismiss the action, or at a minimum the Motion for Further Relief, for lack of standing, failure to prosecute, or laches. Finally, the Court should reverse the legal error of rejecting Rule 60(b)(5) and reverse the denial of the motion to strike. At a minimum, the Court should remand with instructions to apply Rule 60(b)(5) to the Motion for Further Relief and allow the Board to pursue its Rule 60(b)(5) arguments at any upcoming evidentiary hearing.

Dated:    June 11, 2025

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Morgan Brungard*
MORGAN BRUNGARD
Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 94005
Baton Rouge, LA 70804
(225) 999-6864
BrungardM@ag.louisiana.gov

66

## CERTIFICATE OF SERVICE

I certify that on June 11, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ Morgan Brungard*
MORGAN BRUNGARD

# CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 12,962 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ Morgan Brungard*
MORGAN BRUNGARD

Dated:   June 11, 2025