Case No. 25-30075

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

**NAVY, ET AL,**

Plaintiff-Appellee Class,

v.

**SCHOOL BOARD OF ST. MARY PARISH,**

Defendant-Appellant.

---

On Appeal from the U.S. District Court,
Western District of Louisiana, No. 6:65-CV-11351

---

## BRIEF FOR THE PLAINTIFF-APPELLEE CLASS

Michaele N. Turnage Young
Anuja D. Thatte
Avatara Smith-Carrington
Morgan Humphrey
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street N.W., Ste. 600
Washington, D.C. 20005
T: (202) 682-1300

Gideon T. Carter, III
PO Box 80264
Baton Rouge LA 70898-0264
T: (225) 214-1546

*Counsel for Plaintiff-Appellee Class*

## CERTIFICATE OF INTERESTED PERSONS

In accordance with Fifth Circuit Rule 28.2, the undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Former or Current Plaintiff Class Representatives (Appellees) | Former or Current Counsel |
|---|---|
| Gwen Boudreaux | NAACP Legal Defense and Educational Fund, Inc. |
| Bruce Boudreaux | |
| Claude Boudreaux | A.P. Tureaud |
| Debra Bourgeois | A.M. Trudeau, Jr. |
| Crystal Bourgeois | Norman J. Chachkin |
| Melany Bourgeois | Marion Overton White |
| Shelby Bourgeois | Margrett Ford |
| George Boston | Michaele N. Turnage Young |
| Tiffany Dupas | Earl Kirkland |
| Ashley Mayfield | Romane De Paul |
| Michael Mayfield | Ashok Chandran |
| Joshua J. Navy | Anuja Diwakar Thatte |
| Waynisha D. Navy | Avatara A. Smith-Carrington |
| | Morgan Elle Humphrey |
| | Deuel Ross |

| Former or Current Plaintiff Class Representatives (Appellees) | Former or Current Counsel |
|---|---|
| | Samuel Spital |
| | Gideon T. Carter, III |

| Defendants | Former or Current Counsel |
|---|---|
| St. Mary Parish School Board (Appellant)<br><br>B. Edward Boudreaux, Superintendent | Knowles M. Tucker |
| | Leon E. Roy, Jr. |
| | Edward A. De La Houssaye, III |
| | Bernard E. Boudreaux |
| | Bernard E. Boudreaux, Jr. |
| | J. Phil Haney |
| | Robert L. Hammonds |
| | Evan Marshall Alvarez |
| | John Richard Blanchard |
| | John Scott Thomas |
| | Pamela Wescovich Dill |
| | Timothy Joseph Rivera |
| | Morgan Elizabeth Brungard |
| | Hammonds, Sills, Adkins, Guice, Noah & Perkins LLP |
| | Louisiana Attorney General's Office |
| | District Attorney's Office for the 16th Judicial District Court |

| Amicus Curiae Below | Former or Current Counsel |
|---|---|
| United States of America | Edward S. Christenbury |
| | Donald E. Walter |
| | Ceala Eloise Breen-Portnoy |
| | Karen J. King |
| | Jerry Edwards |
| | Katherine Vincent |
| | Allison Christine Reppond |
| | LeighAnn Michelle Smith Rosenberg |
| | James Eichner |
| | United States Department of Justice, Civil Rights Division, Educational Opportunities Section |
| | United States Attorney's Office for the Western District of Louisiana |

| Amicus Curiae Below | Former or Current Counsel |
|---|---|
| Louisiana | Carey T. Jones |
| | Elizabeth Baker Murrill |
| | Morgan Elizabeth Brungard |
| | Zachary Faircloth |
| | Louisiana Attorney General's Office |

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Plaintiff-Appellee Class maintains that this combined interlocutory appeal—which consolidates Defendant-Appellant's March 26, 2025 and February 14, 2025 Interlocutory Appeals—should be dismissed for lack of jurisdiction over any appealable issue, as addressed further in the Plaintiff-Appellee Class's Jurisdictional Statement below (pp. 1-7) and separate Motion to Dismiss for Lack of Jurisdiction (ECF Nos. 39 & 52) that has been carried with the case, ECF No. 57-2.

Accordingly, the Plaintiff-Appellee Class respectfully submits that oral argument is not necessary as this Court need not reach the merits issues underlying this interlocutory appeal. To the extent the Court deems it appropriate to reach the merits of this appeal, however, the Plaintiff-Appellee Class respectfully requests oral argument on the same so that the Court may benefit from a full presentation of the issues.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ................................................v

TABLE OF CONTENTS......................................................................................... vi

TABLE OF AUTHORITIES ................................................................................ viii

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES............................................................................8

INTRODUCTION ................................................................................................10

STATEMENT OF THE CASE..............................................................................13

I.    THE BOARD IS FOUND LIABLE FOR OPERATING A SEGREGATED SCHOOL SYSTEM, AND BECOMES SUBJECT TO BINDING DESEGREGATION ORDERS UNTIL IT MEETS ITS BURDEN TO CURE ITS CONSTITUTIONAL VIOLATION............................................................13

II.   THE BOARD FAILS TO MEET ITS BURDEN OF CURING ITS CONSTITUTIONAL VIOLATION AND ACTIVE LITIGATION RESUMES. ...................................................................................................................14

   A. The District Court Twice Affirms That This Case Has Been a Class Action Since Its Inception—and the Board Declines to Appeal Either Ruling. ......14

   B. After More Than Four Years of Discovery, the Parties Engage in Dispositive Briefing. ......................................................................................................16

   C. The District Court Issues Two Case-Management Orders, and the Board Files the Instant Interlocutory Appeals of These Matters. ....................................17

SUMMARY OF THE ARGUMENT ....................................................................19

ARGUMENT .......................................................................................................21

I.    THIS CONSOLIDATED APPEAL OF THE DISTRICT COURT'S CASE-MANAGEMENT DECISIONS IS IMPROPER AND SHOULD BE DISMISSED FOR LACK OF JURISDICTION. ............................................21

II. THE BOARD'S APPEAL FAILS ON ALL SUBSTANTIVE GROUNDS. ...21

   A. Because this Case Is and Has Always Been a Class Action, the Board's Mootness and Standing Arguments Necessarily Fail. ...................................21

      1.    Precedent forecloses the Board's position. .........................................28

      2.    The Board's strawmen arguments are similarly unavailing................34

   B. Longstanding Precedent Governs How to Bring a School Desegregation Case to a Close—And, at Minimum, the District Court Should Have an Initial Opportunity to Address Any Relevance of Rule 60(b)(5). ..........................38

   C. Nor Can the Board Avoid Curing Its Constitutional Violations by Claiming Laches or Failure to Prosecute, Which in Any Event Cannot Now Apply Given That the Parties Have Been Engaged in Active Litigation for the Last Seven-Plus Years. ...........................................................................................45

CONCLUSION .......................................................................................................51

CERTIFICATE OF COMPLIANCE ......................................................................52

CERTIFICATE OF SERVICE ...............................................................................52

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Hutson*,
    114 F.4th 408, 416 (5th Cir. 2024) .................................................7, 21

*Bd. of Educ. of Okla. City Pub. Schs. v. Dowell*,
    498 U.S. 237 (1991).............................................................*passim*

*Borel ex rel. AL v. Sch. Bd. Saint Martin Par.*,
    44 F.4th 307 (5th Cir. 2022) ..............................................43, 44

*Boudreaux v. Sch. Bd. of St Mary Par.*,
    405 F. Supp. 3d 652 (W.D. La. 2019) .......................................*passim*

*Boudreaux v. Sch. Bd. of St Mary Par.*,
    No. 65 Civ. 11351, 2020 WL 5367088 (W.D. La. Sept. 8, 2020)....15, 19, 23, 32

*Boudreaux v. Sch. Bd. of St. Mary Par.*,
    No. 65 Civ. 11351, 2022 WL 1541620 (W.D. La. May 16, 2022) .............13, 16

*Brown v. Bd. of Ed. of Topeka*,
    84 F.R.D. 383 (D. Kan. 1979) .................................................32

*Brown v. Bd. of Educ. of Topeka*,
    978 F.2d 585 (10th Cir. 1993) ...............................................48

*Brown v. Bd. of Educ. of Topeka (Brown II)*,
    349 U.S. 294 (1955)..........................................................10

*Brown v. Phila. Hous. Auth.*,
    350 F.3d 338 (3d Cir. 2003) .................................................30

*Cardoni v. Prosperity Bank*,
    805 F.3d 573 (5th Cir. 2015) ..................................................6

*Chisom v. Louisiana ex rel. Landry*,
    116 F.4th 309 (5th Cir. 2024) (*en banc*)...............................20, 40, 41

*Columbus Bd. of Educ. v. Penick*,
    443 U.S. 449 (1979)......................................................36, 47

*Cowan v. Cleveland Sch. Dist.*,
748 F.3d 233 (5th Cir. 2014) ............................................................. 1, 10, 34, 43

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
721 F.2d 1425 (5th Cir. 1983) ................................................................. 36, 44, 48

*In re Deepwater Horizon*,
793 F.3d 479 (5th Cir. 2015) ............................................................................. 3

*Doe v. Bush*,
261 F.3d 1037 (11th Cir. 2001) ...................................................................... 25

*Dowell ex rel. Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*,
8 F.3d 1501 (10th Cir. 1993) .......................................................................... 48

*E.E.O.C. v. Kerrville Bus Co.*,
925 F.2d 129 (5th Cir. 1991) ........................................................................... 7

*Freeman v. Pitts*,
503 U.S. 467 (1992) ................................................................................. *passim*

*Frew v. Janek*,
780 F.3d 320 (5th Cir. 2015) ..................................................................... 20, 41

*Garza-Trevino v. New England Fin.*,
320 Fed. App'x 203 (5th Cir. 2009) ................................................................ 4

*Gochicoa v. Johnson*,
238 F.3d 278 (5th Cir. 2000) ........................................................................ 31

*Graves v. Walton Cnty. Bd. of Educ.*,
686 F. 2d 1135 (5th Cir. 1982) ................................................................. *passim*

*Green v. Sch. Bd. of New Kent Cnty.*,
391 U.S. 430 (1968) ........................................................................................ 8

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988) ........................................................................................ 3

*Henry v. Clarksdale Mun. Separate Sch. Dist.*,
579 F.2d 916 (5th Cir. 1978) ........................................................................ 50

*Indianapolis Sch. Comm'rs v. Jacobs*,
420 U.S. 128 (1975)............................................................28, 29, 32

*Jackson v. DeSoto Par. Sch. Bd.*,
585 F.2d 726 (5th Cir. 1978) ...............................................42

*Jenkins ex. rel. Jenkins v. Missouri*,
122 F.3d 588 (8th Cir. 1997) ...............................................47

*Jones v. Caddo Par. Sch. Bd.*,
704 F.2d 206 (5th Cir. 1983) ...............................................22

*June Med. Servs. v. Phillips*,
No. 22-30425, 2022 WL 4360593 (5th Cir. Sept. 28, 2022)..............................4

*Keyes v. School Dist. No. 1*,
413 U.S. 189 (1973)............................................................48

*Liddell ex. rel. Liddell v. Bd. of Educ. of City of St. Louis*,
142 F.3d 1103 (8th Cir. 1998) ...............................................50

*Lockett v. Bd. of Educ. of Muscogee Cnty. Sch. Dist.*,
976 F.2d 648 (11th Cir. 1992) ...............................................33

*Missouri v. Jenkins*,
515 U.S. 70 (1995)............................................................11, 13, 39

*Navarro-Ayala v. Hernandez-Colon*,
951 F.2d 1325 (1st Cir. 1991)...............................................29, 30

*New Hampshire v. Maine*,
532 U.S. 742 (2001)............................................................24, 46

*Pasadena City Bd. of Educ. v. Spangler*,
427 U.S. 424 (1976)............................................................*passim*

*Pegues v. Morehouse Par. Sch. Bd.*,
632 F.2d 1279 (5th Cir. 1980) ...............................................50

*Smith v. Sch. Bd. of Concordia Par.*,
906 F.3d 327 (5th Cir. 2018) ...............................................44

*Spangler v. United States*,
   415 F.2d 1242 (9th Cir. 1969) ...........................................................5, 6

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023)............................................................................49

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
   402 U.S. 1 (1971) ...............................................................................47

*Tasby v. Estes*,
   643 F.2d 1103 (5th Cir. 1981) ......................................................*passim*

*Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Par.*,
   756 F.3d 380 (5th Cir. 2014) .......................................................39, 47

*Thompson v. Dallas City Att'y's Off.*,
   913 F.3d 464 (5th Cir. 2019) ..............................................................29

*United States v. Fordice*,
   505 U.S. 717 (1992)................................................................36, 43, 48

*United States v. Kieffer*,
   991 F.3d 630 (5th Cir. 2021) ...........................................................6, 45

*United States v. Lawrence Cnty. Sch. Dist.*,
   799 F.2d 1031 (5th Cir. 1986) .......................................................37, 43

*Valley v. Rapides Par. Sch. Bd.*,
   702 F.2d 1221 (5th Cir. 1983) ............................................................44

*Williams v. City of New Orleans*,
   729 F.2d 1554 (5th Cir. 1984) ............................................................34

**Statute and Rules**

28 U.S.C. § 1292(a)(1).................................................................*passim*

Federal Rule of Civil Procedure 23 ..............................................*passim*

Federal Rule of Civil Procedure 60(b)(5) .....................................*passim*

## Other Authorities

Fed. R. Civ. P. 60(b) Advisory Comm. Note to 1946 Amend.................................40

La. Dep't of Educ., Multiple Statistics By School System for Total
    Public Students - Feb. 1, 2025 ............................................................................1

Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights
    Roots and Relevance Today*, 66 U. KAN. L. REV. 325, 340 (2017) ....................37

## JURISDICTIONAL STATEMENT

As further addressed in Plaintiff-Appellee Class's Motion to Dismiss the March 26, 2025 and February 14, 2025 Interlocutory Appeals for Lack of Jurisdiction (ECF Nos. 39 & 52),[1] appellate jurisdiction does not lie over these appeals. Rather, Defendant-Appellant St. Mary Parish School Board (the "Board") is asking this Court to review ancillary case-management and administrative decisions from the District Court, which are not appropriate for interlocutory review. This Court should reject the Board's attempt to leapfrog to this Court and unnecessarily waste the Court's resources.

This is a school desegregation lawsuit brought on behalf of the Plaintiff-Appellee Class of Black schoolchildren and their parents. In 1965, the Court found the Board liable for operating a segregated school system and issued an injunction requiring the Board to desegregate. ROA.1590. The Board has never met its burden of proving that it has cured its constitutional violation "root and branch." *Cowan v. Cleveland Sch. Dist.*, 748 F.3d 233, 238 (5th Cir. 2014) (citation omitted).

Today, for example, approximately 37% of the students in the District are Black and 35% are White.[2] Unfortunately, the Board continues to make school siting

---

[1] The Plaintiff-Appellee Class respectfully incorporates by reference all arguments made in support of its Motion to Dismiss for Lack of Jurisdiction, ECF Nos. 39 & 52, which has been carried with this case on appeal, ECF No. 57-2.

[2] La. Dep't of Educ., Multiple Statistics By School System for Total Public Students

and student transfer decisions that have ensured that several formerly *de jure* White schools remain majority White today. ROA 7880-81; ROA.7886-87. Because of the Board's choices, in the 2023-24 school year, nine of its 21 total schools were about 70% or more single race (with another four schools over 50% one race). ROA.7886-87. As a result, about half of the District's Black and White students will spend their entire prekindergarten to twelfth grade education in largely one-race schools. ROA.7842.

Currently, the District Court is considering the Board's request to end this case, which the Board styled as a "Motion to Dismiss the Complaint and Dissolve the Injunction." ROA.4790. That dispositive motion remains pending before the District Court, which ordered the parties to confer about possible evidentiary hearings. ROA.8684. That dispositive motion from the Board is *not* on appeal.

Instead, the Board's inappropriate interlocutory appeals ask this Court to review two of the District Court's ancillary, case-management rulings. ECF Nos. 1 & 11. But this Court lacks appellate jurisdiction over these rulings, which only extends to orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). Such interlocutory appeals are the "exception" to the general rule that appeals may

---

– Feb. 1, 2025 (row 57), https://doe.louisiana.gov/docs/default-source/data-management/feb-2025-multi-stats-(total-by-site-and-school-system).xlsx?sfvrsn=7282c444_3.

be taken only from final decisions. *In re Deepwater Horizon*, 793 F.3d 479, 492 (5th Cir. 2015) (citation omitted). By contrast, a lower court's order "that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988). Here, the two appealed orders concern only intermediate steps in the "progress of litigation" that are plainly "not appealable under § 1292(a)(1)." *Id.*

*First*, the March 26 Appeal arises from a one-sentence ruling merely resolving a motion for clarification below about the structure of any evidentiary hearings the District Court may hold. ROA.8513. The District Court issued a non-substantive ruling clarifying that it would not require oral argument or live testimony on a portion of the Board's dispositive motion that advances arguments under Federal Rule of Civil Procedure 60(b)(5). In that order, the District Court merely "clarifie[d] that any evidentiary hearing(s) to be held in this matter . . . will not . . . include oral argument and/or the presentation of evidence concerning whether the Court should dismiss the lawsuit under Federal Rule of Civil Procedure 60(b)(5)." ROA.8513. Nothing in this order purported to resolve the Board's Rule 60(b)(5) arguments.

Accordingly, the Board is wrong to assert that the District Court "block[ed] the Board from pursuing its arguments." Def.-Appellant's Br., ECF No. 60, at 1 ("Def.'s App. Br."). Rather, the District Court merely decided oral argument or live

testimony is unnecessary. It has not decided the Board's still-pending dispositive motion. ROA.4793-7637. And "the decision about whether to hold an oral hearing is left to the sound discretion of the district court." *Garza-Trevino v. New England Fin.*, 320 Fed. App'x 203, 206 (5th Cir. 2009).

Indeed, no one disputes that the District Court has not ruled on the merits of the Board's Rule 60(b)(5) arguments. Rather, the Board concedes as much. The Board acknowledges that its appeal is ripe only "*if the district court's forthcoming order does not address the Board's Rule 60(b)(5) arguments for dissolving the desegregation orders.*" Def.-Appellant's Opp'n to Mot. to Dismiss Appeal, ECF 48 at 18 (emphasis added). The Board states that it filed its premature appeal "out of an abundance of caution," *id*. at 1, and admits that this appeal requires this Court "to guess at the contents of the district court's *forthcoming* orders," *id*. at 9 (emphasis added). Interlocutory appeals under Section 1292(a)(1) are inappropriate where, as here, "the district court's orders did not touch the merits of the State's underlying request for relief." *June Med. Servs. V. Phillips*, No. 22-30425, 2022 WL 4360593, at *2 (5th Cir. Sept. 28, 2022).

Because the Court plainly has not issued a merits decision, the Board resorts to mischaracterizing the District Judge's comments. For example, the Board claims that the Judge "slapped" the arguments it re-urges on appeal "down as attempts 'to cut corners.'" Def.'s App. Br. at 8, 26, 64. But the Judge's full comments did not

even mention the Board's arguments. Rather, he simply said that "the idea is to swiftly move [management of the Board] from federal court oversight into the hands of the local political structure. But in order to do that, I'm unwilling to cut corners. We have to address the governing law." ROA.8623. These comments merely reflect the meticulousness of a diligent Judge who is sensitive to both parties' concerns.

*Second*, the February 14 Appeal arises from another one-sentence ruling in which the District Judge merely denied the Board's self-styled "Motion to Strike or Dismiss" the Plaintiff-Appellee Class's Motion for Further Relief. ROA.8491-92. Critically, denial of the Board's motion to strike had no impact on the injunction. By its ruling, the District Judge simply allowed the Plaintiff Class's pleading to remain on the docket so the District Court may decide it in the ordinary course of litigation.[3]

The Board's reliance on *Spangler v. United States*, 415 F.2d 1242 (9th Cir. 1969) is unavailing. Def.'s App. Br. at 2. In *Spangler*, the Court allowed the plaintiff United States to appeal a district court order striking certain complaint allegations, which "in substance denied the government its right to the prohibitory and mandatory injunctions sought by its complaint." *Spangler*, 415 F.2d at 1247. *Spangler* is wholly distinct from the situation here, where the denial of the Motion to Strike did not decide the fate of the injunction. The ruling simply allowed the

---

[3] The District Court indicated it will address the Plaintiff Class's Motion for Further Relief after deciding the Board's dispositive motion. ROA.8682-83.

Motion for Further Relief to remain on the docket. Nor can the Board's use of the word "strike" transform a case-management ruling into one that "had the practical effect of 'continuing' the injunction." *Id.*; Def.'s App. Br. at 2. Under this absurd logic, a decision of any kind that extends the life of a case—pro hac vice orders, extensions of time, or other minor orders—would constitute such a "continuation."

Moreover, the Board's contention that the case-management rulings are appealable because they are "inextricably intertwined with the injunction rulings" fails by its own logic. Def.'s App. Br. at 2 (quoting *Cardoni v. Prosperity Bank*, 805 F.3d 573, 579 (5th Cir. 2015)). In *Cardoni*, this Court held that a choice of law question was appealable since it was a "key factor in the denial of the [preliminary] injunction." 805 F.3d at 579. Again, however, the District Court here has *not yet* ruled on the Board's dispositive motion. There is simply no such merits ruling available for this Court's review. "It makes no sense to apply 'de novo review' to a question unreviewed by the district court; that is neither 'de novo' nor 'review.' Rather, that's '*tabula rasa* first view.'" *United States v. Kieffer*, 991 F.3d 630, 638 (5th Cir. 2021).

Nor does the mere fact that the Board is asking this Court to review its Rule 60(b)(5) arguments engender appellate jurisdiction. Def.'s App. Br. at 2. As this Court has emphasized, it is the import of the ruling below that is determinative: an appeal under Section 1292(a)(1) is not cognizable absent an actual injunctive

determination by the District Court—otherwise, this Court regularly would be saddled with reviewing ancillary matters. *See, e.g.*, *E.E.O.C. v. Kerrville Bus Co.*, 925 F.2d 129, 132-33 (5th Cir. 1991) (no jurisdiction under 28 U.S.C. § 1292(a)(1) over appeal where district court order simply referenced appellant's request for relief but did not establish "that the district court was acting specifically to deny injunctive relief"). Given the undisputed fact that the District Court has not denied relief to the Board, "this Court [should] not undertake to decide cases one piece at a time." *Id*.

In short, where a district court's orders do not "change[] the command of the injunction," there can be no appellate jurisdiction under Section 1292(a)(1). *Anderson v. Hutson*, 114 F.4th 408, 416 (5th Cir. 2024), *petition for cert. filed sub nom.*, *Hutson v. United States*, (U.S. Mar. 25, 2025) (No. 24-1022). "To suggest otherwise would open a 'floodgate' of repetitive and untimely appeals." *Id.* This is particularly so in cases where, as here, the District Court has yet to address issues that the Board attempts to put before this Court. This Court can have appellate jurisdiction only after the District Court rules on the merits of the pending dispositive motion. This has not yet happened. There is no basis to review the ancillary case-management steps being appealed now.[4]

---

[4] Prior to the Board's appeals, the District Court had indicated it was moving quickly to set possible evidentiary hearings, ROA.8684, but appears to have held off pending the Board's filing of these unwarranted interlocutory appeals (which in addition to unnecessarily imposing on this Court's resources also appear to be delaying the adjudication and ultimate resolution of this case below).

## STATEMENT OF THE ISSUES

1.      Does this Court have appellate jurisdiction under 28 U.S.C. § 1292(a)(1) to review one-sentence case-management orders issued by the District Court that are not orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions" as required by that jurisdictional statute and, in fact, do not address the status of the injunction in this case at all?

2.      Is a school desegregation lawsuit a class action when: it was first filed as a class action in 1965 before the Federal Rules of Civil Procedure required certification; the Board stipulated that it was a class action at that time; the District Court at that time found that the class satisfied the requirements of numerosity, commonality, and typicality and accepted it was a class action consistent with the then-applicable procedural rules when entering a judgment; and the Court and parties thereafter treated the lawsuit as a class action?

3.      Can a school board found liable for *de jure* segregation invoke Federal Rule of Civil Procedure 60(b)(5) to evade its "affirmative" and "continuing duty to take whatever action may be necessary to create a 'unitary, nonracial system,'" *Green v. School Board of New Kent County*, 391 U.S. 430, 440 (1968) (citation omitted), in contravention of controlling precedent from the Supreme Court and this Court regarding how to bring a school desegregation case to a close?

8

4.      Is a school board estopped from newly raising the doctrines of failure to prosecute or laches to evade its obligation to cure its constitutional violation after being found liable for operating a *de jure* segregated school system, particularly after more than seven years of renewed, active litigation?

## **INTRODUCTION**

The Plaintiff-Appellee Class is committed to ensuring that the Board remedies any ongoing violations of the Constitution and federal law and ending this case as quickly as possible.

In *Brown v. Board of Education*, 347 U.S. 483, 495 (1954), the Supreme Court held that *de jure* racial segregation practiced by school districts violates the Fourteenth Amendment. To remedy the illegal conduct, the Supreme Court ordered federal district courts to supervise local officials in desegregating school systems. *Brown v. Bd. of Educ. of Topeka (Brown II)*, 349 U.S. 294, 301 (1955). "The duty and responsibility of a school district once segregated by law is to take all steps necessary to eliminate the vestiges of the unconstitutional *de jure* system." *Freeman v. Pitts*, 503 U.S. 467, 485 (1992). "The duty is not simply to eliminate express racial segregation: where *de jure* segregation existed, the school district's duty is to eliminate its effects root and branch." *Cowan*, 748 F.3d at 238 (citation omitted).

Thus, a district found liable for operating *de jure* segregated schools bears the burden of proving to a court that: (1) the district has fully and satisfactorily complied with the court's decrees, (2) the "vestiges" of discrimination "have been eliminated to the extent practicable," and (3) the district has demonstrated a "good-faith commitment to the whole of the courts' decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first

instance." *Missouri v. Jenkins*, 515 U.S. 70, 87-89, 101 (1995) (citing *Freeman*, 503 U.S. at 491); *Bd. of Educ. of Okla. City Pub. Schs. v. Dowell*, 498 U.S. 237, 246 (1991)). "[A] school board is entitled to a rather precise statement of its obligations under a desegregation decree. If such a decree is to be terminated or dissolved, [students] as well as the school board are entitled to a like statement from the court." *Dowell*, 498 U.S. at 246.

The Board's dispositive "Motion to Dismiss the Complaint and Dissolve the Injunction" is pending before the District Court. ROA.9784-86. The Plaintiff-Appellee Class shares the Board's goal of bringing this case to a close. But this shared desire alone cannot relieve the Board of its constitutional obligation to comply with existing orders and remedy any present discrimination. To date, the District Court has not yet ruled on whether the Board has not met this burden. Instead of awaiting the District Court's ruling on the merits, however, the Board attempts to sidestep its burden altogether. Rather, the Board asks this Court to depart from settled law to dispose of this lawsuit without requiring the Board to cure its constitutional violation by remedying the vestiges of *de jure* segregation to the extent practicable. It cannot be permitted to shirk its responsibilities in this way.

*First*, this Court should dismiss the appeal for lack of jurisdiction. As addressed in the Jurisdictional Statement above (pp. 1-7) and the Plaintiff-Appellee Class's separate Motion to Dismiss (ECF Nos. 39 & 52), the Board's appeal

improperly seeks this Court's review of non-appealable, ancillary case-management orders. In essence, the Board uses the guise of these case-management rulings to ask this Court to usurp the role of the District Court in managing its docket and deciding the pending dispositive motions in the first instance. Because there is no cognizable basis for this appeal, the appeal should be dismissed so that the District Court can properly adjudicate the merits in the first instance.

Given the jurisdictional infirmity, this Court need not even reach the substance of the Board's arguments on appeal. Nonetheless, these arguments are meritless and uniformly aimed at avoiding the Board's duty to cure its constitutional violations. The Board first attacks this lawsuit for supposed mootness and lack of standing—notwithstanding the class action status of this case since its very inception. The Board also asks this Court to eschew decades of precedent regarding the procedures for closing a school desegregation case. But it can cite no authority to support abandoning binding precedent. Finally, the Board raises spurious arguments about failure to prosecute and laches. But the Board was sued by the Plaintiff Class and found liable by the Court long ago. Given this history, it is the Board that has unduly delayed in remedying its ongoing violations of the law.

The Plaintiff-Appellee Class respectfully requests that this Court dismiss the Board's consolidated appeal for lack of jurisdiction or, alternatively, affirm the case-management rulings below.

# STATEMENT OF THE CASE

**I.    The Board Is Found Liable for Operating a Segregated School System, and Becomes Subject to Binding Desegregation Orders Until It Meets Its Burden to Cure Its Constitutional Violation.**

On October 11, 1965, the District Court held that the Plaintiff Class was "entitle[d] to relief." ROA.1590. It "issued the first of several Decrees and Orders enjoining Defendants from continuing to operate a segregated public school system, implementing desegregation plans, and requiring Defendants to submit reports regarding these efforts to the Court two times each year," *Boudreaux v. Sch. Bd. of St. Mary Par.*, No. 65 Civ. 11351, 2022 WL 1541620, at *1 (W.D. La. May 16, 2022). Subsequently, the District Court amended its operative orders to add other provisions directed at addressing the Board's ongoing constitutional violations. *See Boudreaux v. Sch. Bd. of St Mary Par.*, 405 F. Supp. 3d 652, 656-57 (W.D. La. 2019).

Under settled law, discussed *infra* Argument II.B, the Board is bound by its desegregation obligations unless and until it proves that: (1) the Board has fully and satisfactorily complied with the court's decrees, (2) the "vestiges" of discrimination "have been eliminated to the extent practicable," and (3) the Board has demonstrated a "good-faith commitment to the whole of the courts' decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance." *Jenkins*, 515 U.S. at 87-89, 101 (1995) (citations omitted).

The Board has never been declared unitary and therefore remains subject to the operative desegregation orders today.

## II. The Board Fails to Meet Its Burden of Curing Its Constitutional Violation and Active Litigation Resumes.

The Board continued filing required reports on the docket through 1983 but then lapsed in its obligation to do so. ROA.9757. In 2012, the District Court *sua sponte* closed the matter, ROA.1502-03, but vacated that decision almost immediately, recognizing: "upon further review, the Court finds that additional facts are necessary to address the unitary status of the school system," ROA.1505.

Since 2018, the parties have been engaged in active litigation, including motion to dismiss and class recertification briefing (2019-2020), fact and expert discovery (from 2020-2024, including COVID-related delays), dispositive motion briefing (2024), and pre-trial filings and rulings from the District Court in preparation for a unitary status hearing (2025).

### A. The District Court Twice Affirms That This Case Has Been a Class Action Since Its Inception—and the Board Declines to Appeal Either Ruling.

In 2019, the Board moved to dismiss the case as moot, arguing that the case was never a class action and the original plaintiffs had aged out of school. *See Boudreaux*, 405 F. Supp. 3d at 658. The District Court denied that motion, holding that this suit was filed before Federal Rule of Civil Procedure 23 required formal class certification and that "under the facts of this matter this suit constitutes an

implied class action." *Id.* at 663-64. In 1965, the Board itself had stipulated that "the plaintiffs are residents of St. Mary Parish, Louisiana, and are members of a class so numerous that it would be impractical to bring them all into court as plaintiffs, and that plaintiffs are, therefore, under the law entitled to bring this suit as a class action." *Id.* at 655 (quotation marks and citation omitted). The District Court then granted the motion to substitute the original plaintiffs with the current class representatives who are the parents of Black children presently enrolled in the District. *Id.* at 666-67. The District Court directed that the case be "formally recertifie[d] as a class action." *Id.* at 666. The Board did not appeal or seek reconsideration of that decision.

In 2020, over the Board's objections, the District Court held that Plaintiffs had satisfied all requirements of Rule 23 such that "formal certification of this matter as a class action is warranted." *Boudreaux v. Sch. Bd. of St Mary Par.*, No. 65 Civ. 11351, 2020 WL 5367088, at *1 (W.D. La. Sept. 8, 2020). The Court recertified the following injunctive class:

> (1) All Black students currently enrolled or who will in the future enroll in schools operated by the St. Mary Parish School Board; (2) all Black students who previously attended the foregoing schools and would remain eligible to attend such schools, but for the fact they were expelled from such schools due to discriminatory policies of the St. Mary Parish School Board; and (3) the custodial biological or custodial adoptive parents of the foregoing students.

*Id.* at *9. The Board did not appeal or seek reconsideration of this decision either.

**B. After More Than Four Years of Discovery, the Parties Engage in Dispositive Briefing.**

From 2020 to 2024, the parties engaged in intense fact and expert discovery, with pauses due to the pandemic. ROA.9763-77; *Boudreaux*, 2022 WL 1541620, at *1. After discovery (pursuant to a negotiated Scheduling Order so-ordered by the Court), the parties filed pre-trial *Daubert* and limine motions, exchanged witness and exhibit lists, and filed their respective dispositive motions. ROA.9779-9782. In October 2024, the Board filed its dispositive "Motion to Dismiss the Complaint and Dissolve the Injunction," including over two thousand pages of exhibits. ROA.4793-7637. In November 2024, the Plaintiff Class filed its combined "Opposition to the Board's Motion to Dismiss the Complaint and Dissolve the Injunction and Motion for Further Relief," including several hundred pages of exhibits, declarations, and expert reports. ROA.7825-8190; ROA.9787-88.

The Plaintiff-Appellee Class's filing outlined the Board's persistent failure to cure its constitutional violations, including ongoing breaches of court orders and stark evidence of discrimination across school operations in present day. *See, e.g.*, ROA.7867-7940. Among other evidence, the Board has continued to operate several formerly *de jure* White schools as largely one-race schools today and over 60% of the District's schools remain predominantly one-race. ROA 7880-81; ROA.7886-87. The District also allowed segregative student transfers for years: over the past half-decade, the transfer option was mostly used by White students to transfer to

predominately White schools, thereby making racial isolation within the District worse. ROA.7842. Other recent Board actions have also perpetuated the vestiges of discrimination, such as constructing new schools in locations that guaranteed that the schools would open and remain overwhelmingly Black, ROA.7842; assigning teachers to schools in a way that reinforces the race-based perception of the schools, ROA.7843; failing to offer particular college preparatory courses at predominantly Black schools (while offering such courses at majority-White schools) ROA.7906; and allowing mold, flooded and inoperable restrooms, and pest and vermin infestations to fester at majority-Black schools—but not White schools, ROA.7843-44. Even today, nearly half of the District's Black and White students will spend their entire education in racially isolated schools. ROA.7842.

The Board's dispositive Motion to Dismiss and the Plaintiff Class's Motion for Further Relief were fully briefed as of December 2024. ROA.9790. The Board also filed a separate "Motion to Dismiss or Strike the Plaintiff Class's Motion for Further Relief" not contemplated by the Scheduling Order. ROA.9789. That separate motion was fully briefed as of January 2025. ROA.9791.

## C. The District Court Issues Two Case-Management Orders, and the Board Files the Instant Interlocutory Appeals of These Matters.

In January 2025, after oral argument, the District Court issued pretrial orders in preparation for addressing the Board's dispositive motion and the Plaintiff Class's Motion for Further Relief, including the two case-management orders on appeal.

*First*, in January 2025, the District Court issued an order denying in one-sentence a "Motion to Strike or Dismiss the Plaintiff Class's Motion for Further Relief" filed by the Board. ROA.8492. That order did not adjudicate the substance of the Plaintiff Class's Motion for Further Relief but simply allowed it to remain on the docket.[5] This is the order from which the Board's February 14, 2025 Appeal arises.

*Second*, in February 2025, the District Court resolved a motion for clarification about any evidentiary hearings. Specifically, the District Court issued a non-substantive order clarifying that, for the purposes of those evidentiary hearings, it did not require oral argument or live testimony on a portion of the Board's pending dispositive motion advancing arguments concerning Federal Rule of Civil Procedure 60(b)(5). ROA.8513. That order did not make any decision as to the merits of the Board's Rule 60(b)(5) arguments, which remain pending before the District Court. This is the order from which the Board's March 26, 2025 Appeal arises.

The Plaintiff-Appellee Class filed a Motion to Dismiss the instant interlocutory appeals for lack of jurisdiction. ECF Nos. 39 & 52. That Motion to Dismiss has been fully briefed, and the Court carried it with this appeal. ECF No. 57-2.

---

[5] The District Court indicated it will address the Plaintiff Class's Motion for Further Relief after ruling on the Board's dispositive Motion to Dismiss or Dissolve the Injunction. ROA.8682-83.

## SUMMARY OF THE ARGUMENT

This Court lacks jurisdiction over the instant appeals, which do not present any appealable issue under 28 U.S.C. § 1292(a)(1) but instead seek interlocutory review of ancillary case-management orders below. These appeals seek to impermissibly usurp the District Court's authority to manage its docket and decide the merits of this case in the first instance, and unnecessarily impose on this Court's resources.

Given the jurisdictional infirmity, this Court should dismiss the appeals outright. However, all the Board's substantive arguments also fail on their own terms. The Board's arguments regarding supposed mootness and lack of standing fail because this case has been a class action since inception. The Board's theory is expressly foreclosed by binding precedent. Moreover, this suit was filed as a class action in 1965; the Board stipulated at that time that it was a class action; the Court accepted that stipulation in entering its decree enjoining the Board from continuing to operate segregated schools; and the Court and the litigants have treated it as a class action ever since. Further, if there was any prior infirmity, the District Court has recently substituted new plaintiffs, recertified the class, and three-times correctly rejected the Board's position. *See Boudreaux*, 2020 WL 5367088, at *9; *Boudreaux*, 405 F. Supp. 3d at 664; ROA.8501. This Court should similarly reject this appeal.

This Court likewise must reject the Board's invitation to eschew decades of controlling precedent regarding how a school desegregation case may be brought to a close. The Board can offer no support for its theory that this Court should suddenly depart from this seminal, binding law and instead apply the Board's preferred formulation under Rule 60(b)(5) of the Federal Rules of Civil Procedure. To the contrary, as this Court has repeatedly confirmed, *Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 246 (1991), and related precedent govern whether and how to bring a school desegregation case to a close. *See Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 318-19 (5th Cir. 2024) (*en banc*); *Frew v. Janek*, 780 F.3d 320, 329 n.37 (5th Cir. 2015).

The Board's spurious, last-ditch arguments about failure to prosecute and laches similarly fail. These arguments cannot absolve the Board of its responsibility to satisfy its burden of proving that it has sufficiently eradicated all vestiges of *de jure* segregation—particularly not when these issues are being raised for the first time after seven-plus years of renewed, active litigation. The Board was found liable long ago. It is the Board that has unduly delayed satisfying its constitutional obligations.

**ARGUMENT**

**I.    This Consolidated Appeal of the District Court's Case-Management Decisions Is Improper and Should Be Dismissed for Lack of Jurisdiction.**

As more fully addressed in the Plaintiff-Appellee Class's separate Motion to Dismiss the instant interlocutory appeals (ECF Nos. 39 & 52) and the Jurisdictional Statement above (pp. 1-7), appellate jurisdiction does not lie over the instant appeals because they do not present any appealable issue under 28 U.S.C. § 1292(a)(1). Instead, the Board is asking this Court to weigh in on the District Court's ancillary case-management decisions, which are not proper for interlocutory review—and asking this Court to impermissibly intrude on the District Court's role to decide the merits of this case in the first instance.

The Court should not permit the Board to short-circuit the normal process. The Board has imposed on enough of this Court's resources through its premature and improper appeals. "To suggest otherwise would open a 'floodgate' of repetitive and untimely appeals." *Anderson*, 114 F.4th at 416. These interlocutory appeals should be dismissed for lack of jurisdiction so that the District Court can rule on dispositive motions before any appeal may be appropriate.

**II.    The Board's Appeal Fails on All Substantive Grounds.**

**A. Because this Case Is and Has Always Been a Class Action, the Board's Mootness and Standing Arguments Necessarily Fail.**

Despite the Board's assertions of mootness and lack of standing, premised on

21

the passage of time, Def.'s App. Br. at 28-54, this case is, and has always been, a class action. "It is firmly established that where a class action exists, members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive after the claims of the original named plaintiffs are rendered moot." *Graves v. Walton Cnty. Bd. of Educ.*, 686 F. 2d 1135, 1138 (5th Cir. 1982) (citing *Rogers v. Paul*, 382 U.S. 198, 199 (1965)). The Board's mootness and standing arguments are not escape hatches to allow the Board to avoid curing its constitutional violations.

It is unequivocal that, as early as 1965, the District Court declared this case to be a class action. Plaintiffs filed it as a class action in 1965. ROA.1568-74. The Board stipulated at that time that it was a class action. ROA.1584. The court accepted that stipulation in entering its judgment against the Board. ROA.1585-87. And the court and litigants have treated it as a class action ever since. *See, e.g.*, ROA.4863; ROA.5296; ROA.5927; ROA.5082; ROA.58; ROA.103; ROA.365; ROA.428; ROA.477; ROA.528; ROA.695; ROA.795; ROA.896; ROA.983; ROA.1071; ROA.1119; ROA.1169; ROA.1227; ROA.1333; ROA.1446; ROA.1585-87; ROA.1593-96; ROA.5154; ROA.95; ROA.276-79; ROA.325; ROA.461; ROA.499; ROA.507; ROA.518; ROA.521; ROA.97.

The Federal Rules of Civil Procedure did not require courts to enter class certification orders until 1966. *Jones v. Caddo Par. Sch. Bd.*, 704 F.2d 206, 212 (5th Cir. 1983). Nonetheless, in relying on the Board's stipulation, the District Court's

judgment essentially makes comparable findings. In the first paragraph of its 1965 Decree, the court states, "it being stipulated that plaintiffs are members of the Negro race and residents of the parish of St. Mary, Louisiana, and this being a class action affecting all members of the class to which plaintiffs belong who are similarly situated, and the right sought to be enforced is common to all members of such class. . . ." ROA.1585. By referring to "members of the class" "who are similarly situated" and that "the right sought to be enforced is common to all members of the class," the court was relying on the stipulations to find commonality and typicality. In referring to Plaintiffs as a class, the court clearly accepted that portion of the Board's stipulation wherein it agreed that Plaintiffs "are members of a class so numerous that it would be impractical to bring them all into court as plaintiffs." ROA.1584.

Both principles of estoppel and binding precedent expressly foreclose the theory the Board now advances. The District Court has correctly applied the law in 2019 and again in 2020. *See Boudreaux*, 2020 WL 5367088, at *9; *Boudreaux*, 405 F. Supp. 3d at 664. Having declined to appeal either of those prior determinations, however, the Board now improperly attempts to shoehorn these arguments into its appeal of administrative rulings.

The Board is wrong to urge this approach. *First*, the Board's arguments are contrary to its own stipulation and conduct over decades, which the court, the Plaintiff-Appellee Class, and the Board itself have justifiably relied on by treating

the case as a class action since the start. The Plaintiff-Appellee Class, and the District Court, unquestionably would suffer detrimental harms if the Board is allowed to simply renege on its stipulation and ignore its past conduct. In this circumstance, estoppel "'prohibit[s] parties from deliberately changing positions according to the exigencies of the moment.'" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).

*Second*, and in any event, this Court has specifically considered and rejected the theory advanced by the Board here. "[T]he lack of a formal order of class certification" does not undermine the class action status of a suit where it has been "specifically described and treated as such by the parties and the trial court." *Graves*, 686 F.2d at 1140. In *Graves*, a school desegregation case filed in 1968, the district court "treated the case as a class action," but nothing in the record indicated that it was certified as such. *Id.* at 1136. More than a decade later, a group of parents intervened as defendants. The intervenors argued that the case was moot because the class was never certified and the original named plaintiffs had graduated or left school. *Id*. This Court rejected the intervenors' argument. "To state at this late date that this was not a class action, 'would be to ignore the substance of the proceeding below[.]'" *Id*. at 1140 (quoting *Senter v. Gen. Motors Corp*., 532 F.2d 511, 522 (5th Cir. 1976), and *Bing v. Roadway Express, Inc*., 485 F.2d 441, 447 (5th Cir. 1973)). Indeed, the record "evinces the class action status of this case; despite the lack of a

formal order of class certification, this case was in fact a class action and was specifically described and treated as such by the parties and the trial court." *Id.*; *accord Doe v. Bush*, 261 F.3d 1037, 1051 (11th Cir. 2001) (explaining that the plaintiff class "should not be penalized because the district court [and the parties] either forgot to address the certification question sooner, or determined that it was not necessary to do so").

Here, as in *Graves*, the 1965 Complaint specifically alleged that "Plaintiffs bring this action as a class suit pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of other Negro children and their parents in St. Mary Parish, similarly situated, all of whom are affected by the policy, practice, custom and usage complained of herein as more fully appears." ROA.1568. That is essentially how one of the classes was defined in *Graves*. 686 F.2d at 1139.

Moreover, as in *Graves*, the parties and court here have consistently treated this case as a class action. Just as in *Graves*, "the scope of the relief requested clearly indicate[s] that the suit was intended to benefit the entire class," and the decree "adopted by the court provided relief not for the individual plaintiffs but for the entire plaintiff class of [Black] parents and students." *Graves*, 686 F.2d at 1138-39. Here, the Complaint stated: "Plaintiffs and the members of the class which that represent are irreparably injured by the acts of defendants complained of herein[,]"

then asked the District Court to enjoin the Defendants "from continuing to operate a compulsory biracial school system in St. Mary Parish, Louisiana." ROA.1571-72. The court issued systemwide relief not only to the named Plaintiffs, but to all Black children, their parents, and educators. ROA.1585 (recognizing the parties stipulation that "plaintiffs are members of the Negro race and residents of the parish of St. Mary, Louisiana, and this being a class action affecting all members of the class to which plaintiffs belong who are similarly situated, and the right sought to be enforced is common to all members of such class," as a basis for permanently enjoining the Defendants from "[c]ontinuing to operate a segregated or biracial public school system"). That is, while there were only five Black students named as class representatives in 1965, the Court issued a class-wide injunction requiring *all* the Board's schools to admit *all* Black students.

The parties and court then continued to treat the case as a class action. For example, in August 1966, Plaintiffs filed a motion for further relief asking that the case be expedited so that "full and effective relief . . . may be offered movants *and members of their class*." ROA.4863 (emphasis added). Similarly, in November 1968, Plaintiffs filed a brief "on behalf of the plaintiff Negro school children" in multiple cases, including this one. ROA.5296. Referring to these cases, Plaintiffs argued, "the right to desegregated educational opportunities established by *Brown* has never been realized *by the overwhelming majority of Negro children in these*

*parishes*," a statement clearly not limited to the named plaintiffs. ROA.5297 (emphasis added). For its part, the United States recognized in a September 1969 filing: "This class action was commenced by Negro parents of St. Mary Parish on August 31, 1965." ROA.350.

The Board also continued to treat the case as a class action. For example, the Board provided lengthy answers to interrogatories and prepared reports that pertained to all 28 or so schools for years and proposed desegregation plans that affected the entire school system. *See, e.g.*, ROA.5082; ROA.58; ROA.103; ROA.365; ROA.428; ROA.477; ROA.528; ROA.695; ROA.795; ROA.896; ROA.983; ROA.1071; ROA.1119; ROA.1169; ROA.1227; ROA.1333; ROA.1446.

And the District Court continued to treat the case as a class action. For example, the Court issued an *en banc* order in June 1969 in multiple school desegregation cases, including this one, stating, "[t]hese law suits [sic] are all class actions for black citizens[.]" ROA.97. All of the relief granted has been class-wide relief applicable to the entire school system, including both the original 1965 Decree and subsequent orders. *See, e.g.*, ROA.1585-87; ROA.1593-96; ROA.5154; ROA.95; ROA.276-79; ROA.325; ROA.461; ROA.499; ROA.507; ROA.518; ROA.521.

In sum, as in *Graves*, here the class was clearly defined, and the parties and District Court consistently treated the case like a class action. *Graves* is therefore

directly on point. *Graves* specifically accepted that a class action can exist even if it is not formally certified until a much later time. Same here, the case was "specifically described and treated as [a class action] by the parties and the trial court" such that "[a]lthough no formal order of certification [was] entered by the district court [until 2020], [the] case [has always been] a class action." 686 F.2d at 1136, 1140.

### 1. Precedent forecloses the Board's position.

Indeed, this principle of permitted recertification of class actions applies even more forcefully here than in *Graves* itself. In *Graves*, the class action was not certified even though the case was brought *after* the 1966 amendments to Rule 23. Here, the case was already stipulated as a class action by the Board and declared a class action by the Court *before* the enactment of the 1966 amendments. The Board nonetheless now argues that *Pasadena City Board of Education v. Spangler*, 427 U.S. 424 (1976), and *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981), dictate a different result. However, the Board is incorrect.

*First*, the Court in *Graves* itself considered *Spangler* and nevertheless rejected the argument that the Board now re-urges. Specifically, the Fifth Circuit rejected the argument that *Spangler*—along with other cases applying *Indianapolis School Commissioners v. Jacobs*, 420 U.S. 128 (1975)—makes the lack of formal class certification dispositive. In fact, after citing *Spangler* and other cases applying *Jacobs*, the Fifth Circuit concluded: "We do not find appellants' reliance upon the

*Jacobs* line of cases persuasive." *Graves*, 686 F.2d at 1138. "Since *Spangler* was decided, the Fifth Circuit . . . has continued to hold that a class action may proceed despite the district court's failure to certify a class where the 'defendants knew of the class nature of the action and acquiesced in it.'" *Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1336 & n.12 (1st Cir. 1991) (quoting *Graves*, 686 F.2d at 1139) (alterations omitted).

The Board may disagree with *Graves*'s interpretation of *Spangler*, but *Graves* is, of course, controlling. "[A] panel's interpretation of a Supreme Court decision is binding on a subsequent panel even if the later panel disagrees with the earlier panel's interpretation." *Thompson v. Dallas City Att'y's Off.*, 913 F.3d 464, 468 n.17 (5th Cir. 2019) (citing *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014)). And *Graves* considered and rejected an argument that *Spangler* (and the other *Jacobs* line of cases) prohibits treating a case as a class action when it was not formally certified as such. *See Graves*, 682 F.2d at 1138. This Court is bound by that decision.

Although *Graves* is controlling, the Board's reliance on *Spangler* is unpersuasive on its own terms. As the First Circuit has explained, *Spangler* did not involve a written stipulation that the matter should proceed as a class. *See Navarro-Ayala*, 951 F.2d at 1334-36 ("When the parties stipulate that the action is a class action and clearly define the members of the class, and the court enters judgment

pursuant to the stipulated terms, this may sufficiently imply certification for purposes of Fed. R. Civ. P. 23(c)(1).”). Such a written stipulation serves the same purpose as class certification, *i.e.*, to “give clear definition to the action.” *Id*. at 1335-36 (quoting Rule 23(c)(1) Advisory Committee’s notes to the 1966 amendments). Where, as here, there is such a stipulation that the court approves, *Spangler* is distinguishable, and an “action may proceed as a class action.” *Id*. at 1336.

Moreover, the language in *Spangler* upon which the Board relies is dicta. In *Spangler*, the Court concluded that the case was not moot given the United States’s intervention. *Spangler*, 427 U.S. at 430-31. Thus, the Court’s comments as to whether the case would or would not have been moot had the plaintiff class there been the only other party were plainly not “necessary” to the Court’s decision. *See Brown v. Phila. Hous. Auth*., 350 F.3d 338, 344 (3d Cir. 2003) (acknowledging that the court’s comments in *Spangler* concerning the effect of a lack of class certification on mootness were dicta).

Nor can the Board evade *Graves* by arguing that *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981), predated *Graves* and therefore governs. *Tasby* simply repeated dicta from *Spangler*. And the Fifth Circuit itself in *Graves* considered *Spangler* and rejected the argument that the Board now makes. *Tasby* cites *Spangler* in support of the proposition that “a school desegregation case *can* become moot if it is not certified as a class action, the named plaintiffs have graduated from school, *and there*

*is no other factor which avoids mootness*." *Id.* at 1106 (citing *Spangler*, 427 U.S. at 429-30) (emphases added). This sentence leaves open the possibility that other factors, like the substitution and recertification of the class, which occurred here, may preclude mootness. Further this sentence in *Tasby* is dicta because the Court there concluded the case was *not* moot without any class certification analysis. *See id.* That is, the Court did not need to decide this issue to rule. This dicta is not binding on this panel. *See, e.g.*, *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000) ("Of course, one panel's dictum cannot bind future panels.").

In any event, *Graves*'s holding is fully consistent with this *Tasby* dicta. Although a case "can become moot" if it is "not certified as a class action . . . and there is no other factor which avoids mootness," *Tasby*, 643 F.2d at 1106, *Graves* identifies another "factor which avoids mootness," *i.e.*, when a case is "specifically described and treated as [a class action] by the parties and the trial court" such that it maintains its character as a class action notwithstanding the lack of certification. *Graves*, 686 F.2d at 1140. *Graves*'s holding is binding here and forecloses the Board's assertion that the belated formal recertification means this case has not always been a class action. Indeed, even the landmark school desegregation case, *Brown v. Board of Education*, was never formally certified as a class action (it, too, preceded the 1966 amendments of Rule 23) and the court nevertheless allowed the case to proceed over the defendant's objection that the claims of the originally named

plaintiffs were moot and even though the case had been dormant for 24 years. *Brown v. Bd. of Ed. of Topeka*, 84 F.R.D. 383, 392-96, 405 (D. Kan. 1979) (rejecting *Jacobs*, 420 U.S. 128, as unpersuasive, distinguishing *Jacobs* on the ground that it did not involve new plaintiffs seeking to keep the lawsuit alive). As the *Brown* court noted, the "[l]ack of certification is . . . not surprising" given that the case was filed before 1966. *Id.* at 394. It continued: "This Court is not inclined to tell the Supreme Court that it erred in *Brown I* when it stated 'these are class actions.'" *Id.* (citation omitted).

Additionally, the facts in *Spangler* and *Tasby* are distinguishable in multiple ways. Here, unlike in *Spangler*, the District Court has recertified the class, and the parties are not asking this Court to address the issue of certification for the first time on appellate review. *Compare Boudreaux*, 2020 WL 5367088, at *9 (granting motion for class recertification) *with Spangler*, 427 U.S. at 430 (noting the lack of class certification). And, unlike the Board, the defendants in *Spangler* did not stipulate that the lawsuit is a class action, and there is no indication that the Court or parties in *Spangler* relied on such a stipulation. That is, the Court and defendants in *Spangler* did not face the high hurdle of estoppel that the Board cannot overcome here. Further, unlike *Spangler* (filed in 1968), this case was filed in 1965 before the federal rules required class certification. Also, unlike *Spangler*, as soon as the issue of class certification was raised, the Plaintiff Class here successfully moved to substitute the original plaintiffs with new class representatives with live claims.

*Compare Boudreaux*, 405 F. Supp. 3d at 654 (granting motion to substitute plaintiffs) *with Spangler*, 427 U.S. at 430 (noting that the plaintiffs had all graduated without any a motion to substitute class representatives). Finally, the underlying facts in *Tasby* are inapplicable. There, the district contended that the plaintiffs had graduated and therefore lacked standing. This Court rejected this argument because nothing in the trial record supported the district's contention. Here, there is no dispute that the current class representatives have live claims, and that the District Court recertified the class action in 2020. This precludes mootness.

In sum, "such a class action as this dealing with continuing constitutional violations does not become moot because of years of delay (much of it attributable to [Defendant]) which occasioned the graduation of the named, original student plaintiffs from the school system." *Graves*, 686 F.2d at 1138 (quoting *Kelley v. Metro. Cnty. Bd. of Educ. of Nashville*, 463 F.2d 732, 743 (6th Cir. 1972)); *see Lockett v. Bd. of Educ. of Muscogee Cnty. Sch. Dist.*, 976 F.2d 648, 649 (11th Cir. 1992) (vacating dismissal of school desegregation case since the lower court erred when it dismissed the case as moot because the original class of plaintiffs were no longer students and remanding "for further proceedings because the district court and original parties treated this case from the outset as one that was, in fact, a class action, that is, a suit to benefit directly persons other than the named plaintiffs." (citing *Graves*, 686 F.2d at 1138)).

For similar reasons, the Board's standing arguments also fail. *See* Def.'s App. Br. at 45-54. As the Board has already conceded, "if this has been a class action since 1965, the 2019 Plaintiffs are descendant class members with rights in the desegregation decree." ROA.8275.[6] Moreover, "[b]y definition, every child in [a system under a desegregation order] is a specific victim of any illegality." *Williams v. City of New Orleans*, 729 F.2d 1554, 1569 (5th Cir. 1984). Thus, not only did the Plaintiff-Appellee Class of Black schoolchildren and their parents clearly have standing to seek relief from the injury caused by the Board's operation of segregated schools; the Plaintiff-Appellee Class likewise has standing to enforce the lower court's orders granting relief from the vestiges of *de jure* segregation now.

### 2. The Board's strawmen arguments are similarly unavailing.

To avoid the clear implications of *Graves*, the Board props up and purports to knock down other strawman arguments that the Plaintiff-Appellee Class has never made. Among these, given that this case is and always has been a class action, the Plaintiff-Appellee Class is not proceeding on a capable-of-repetition-yet-evading-review theory. The Board's arguments in that regard are beside the point. *See* Def.'s App. Br. at 38-40.

The Board also appears to argue that—because the Plaintiff-Appellee Class

---

[6] *See Cowan*, 914 F. Supp. 2d at 810-11 (holding that newly substituted plaintiffs in a school desegregation case have standing).

supported its opposition to the Board's motion for unitary status[7] below by setting forth evidence of the multiple ways the Board has violated court orders and engaged in recent acts of intentional discrimination—the Plaintiff-Appellee Class is attempting to bring brand-new claims. *See* Def.'s App. Br. at 49-51. This is false. By zealously opposing the Board's motion, the Plaintiff-Appellee Class plainly does not purport to bring a new lawsuit, advance new claims, amend the complaint, or seek to intervene in a lawsuit to which it is already a party. That the Plaintiff-Appellee Class styled its opposition to the Board's motion as both an opposition and a motion for further relief does not change that. Rather, where a plaintiff class "seek[s] to enforce [the desegregation order] and to obtain additional relief now believed necessary to accomplish the objectives contemplated by that order," the plaintiff class "should not be expected to make a renewed showing of personal interest each time they bring a motion seeking additional relief." *Tasby*, 643 F.2d at 1105.

And the Board is simply wrong when it argues that the Plaintiff-Appellee Class lacks standing because, per the Board's bare assertion, current evidence of racial disparities within the District is not traceable to the Board's operation of segregated schools and is therefore also not redressable. *See* Def.'s App. Br. at 52-

---

[7] As noted, the Board styled its motion asking that the District Court declare that it has achieved unitary status as a "Motion to Dismiss the Complaint and Dissolve the Injunction." The District Court has yet to rule on this motion.

54. This Court has made clear that "until [the District] has achieved the greatest degree of desegregation possible under the circumstances, the [Board] bears the continuing duty to do all in its power to eradicate the vestiges of the dual system." *Davis v. E. Baton Rouge Par. Sch. Bd.*, 721 F.2d 1425, 1435 (5th Cir. 1983). "Each instance of a failure or refusal to fulfill this affirmative duty continues the violation of the Fourteenth Amendment." *Columbus Bd. of Educ. v. Penick*, 443 U.S. 449, 459 (1979). Since the Plaintiff Class long ago proved the Board's liability, it is "[t]he school district [that] bears the burden of showing that any current imbalance is not traceable, in a proximate way, to the prior violation," *Freeman*, 503 U.S. at 494, and "that it has dismantled its prior *de jure* segregated system," *United States v. Fordice*, 505 U.S. 717, 739 (1992). In other words, where a school district has been found liable for operating a *de jure* segregated school system, present-day racial disparities are presumed to be the result of the past *de jure* segregation, and it is the defendant's burden to rebut that presumption. Moreover, the Plaintiff Class has presented evidence that the current disparities are the vestiges of prior discrimination, the result of violations of court orders, and/or spring from continued acts of impermissible racial discrimination. *See, e.g.*, ROA.7867-68. For example, the Board has continued to operate several formerly *de jure* White schools as largely one-race schools today, ROA.7886-87, for many years been in breach of its duty not to allow segregative transfers, ROA.7842, chosen to build its newest schools in locations that functionally

guaranteed they would open and remain predominantly one-race, ROA.7842, and allowed extreme facilities deficiencies to fester at only majority-Black schools, ROA.7843-44.

"Those who invoke federal jurisdiction to correct racial discrimination that has continued as a result of both noncompliance with a desegregation order and earlier *de jure* segregation need not show that the segregative practices have a current systemwide impact, as would be required to establish the right to relief *ab initio*." *United States v. Lawrence Cnty. Sch. Dist.*, 799 F.2d 1031, 1043 (5th Cir. 1986).

Indeed, the Plaintiff-Appellee Class prosecuted its claims and secured a liability decision long ago. This lawsuit is now in the post-liability phase in which the Board bears the burden of complying with the lower court's order directing it to cure its constitutional violation. The Plaintiff-Appellee Class undeniably has standing to ask that the court enforces the existing remedial order and that the Board eliminates the identified vestiges of segregation to the extent practicable.

And of course, school desegregation cases are the paradigmatic example of class action litigation—in fact, the 1966 amendments to Rule 23 were specifically drafted with desegregation cases in mind. *See, e.g.*, Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights Roots and Relevance Today*, 66 U. KAN. L. REV. 325, 340 (2017) ("The Advisory Committee moved to create an effective procedural tool that would more easily enable and incentivize courts to issue

systemic desegregation orders post-*Brown*."). It strains credulity for the Board to now ignore decades of precedent and even its own conduct to suggest that this case with the sole purpose of remedying segregation across the school district has been anything but a class action from the start.

**B. Longstanding Precedent Governs How to Bring a School Desegregation Case to a Close—And, at Minimum, the District Court Should Have an Initial Opportunity to Address Any Relevance of Rule 60(b)(5).**

There is no dispute that the Board has not yet been declared "unitary"— meaning that it has not been held to have met the conditions required to be relieved of its desegregation obligations. This is the key issue that remains pending before the District Court in the Board's dispositive Motion to Dismiss the Complaint and Dissolve the Injunction. Longstanding precedent governs how to bring a school desegregation case to a close. The Board's attempt to supplant this binding authority with its preferred procedures under Rule 60(b)(5) of the Federal Rules of Civil Procedure is plainly improper, and certainly does not provide a mechanism for the Board to escape its constitutional duty.

As discussed, a school district found liable for *de jure* segregation operates under judicial supervision until it can offer proof that enables the court to make a precise statement of factual findings that: (1) the district has fully and satisfactorily complied with the court's decrees, (2) the "vestiges" of the prior de jure segregation "have been eliminated to the extent practicable," and (3) the district has

demonstrated a "good-faith commitment to the whole of the courts' decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance." *Jenkins*, 515 U.S. at 87-89, 101 (citation omitted).

Before judicial supervision may be relinquished, "a school board is entitled to a rather precise statement of its obligations under a desegregation decree. If such a decree is to be terminated or dissolved, [students] as well as the school board are entitled to a like statement from the court." *Dowell*, 498 U.S. at 246.[8] A school district found liable for *de jure* segregation does not meet the standards until the court unambiguously grants unitary status with precise factual findings that "all vestiges of past discrimination" have been eradicated. *See Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Par.*, 756 F.3d 380, 386-87 (5th Cir. 2014) (affirming the denial of a motion to dismiss a long pending desegregation case).

Despite the lack of a substantive decision from the District Court regarding whether Rule 60(b)(5) has any application to this school desegregation case, the Board asks this Court to weigh in on the topic. *See* Def.'s App. Br. at 62-66. But the Board's arguments again provide no safe harbor for its failure to cure its constitutional violation. Controlling law requires adherence to the longstanding desegregation precedent outlined above, and even the Board's own cited authorities

---

[8] *See also Freeman*, 503 U.S. at 498 (emphasizing the need for specific factual findings).

confirm this.

For starters, Rule 60(b)(5) is a procedural mechanism that cannot displace binding "substantive law." *See* Fed. R. Civ. P. 60(b) Advisory Comm. Note to 1946 Amend. ("Rule 60(b) does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief."). Here, direct and controlling substantive law governs how to bring a school desegregation case to a close. Thus, the Board's request to apply Rule 60(b)(5)— and to cast aside the Supreme Court's well-established legal framework—cannot stand. This Court has repeatedly confirmed as much, including last year in *Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 318-19 (5th Cir. 2024) (*en banc*)—a decision that the Board does not acknowledge.

In *Chisom*, this Court, sitting *en banc*, re-affirmed that the appropriate standard when evaluating a school desegregation case is *Dowell* and related precedent, not any Rule 60(b)(5) case law developed in other contexts. In *Chisom* (a voting rights case), this Circuit applied Rule 60(b)(5) rather than *Dowell*—but did so by explaining that the election-related injunction there implicated "an entirely different creature" than a school desegregation order, which remains subject to *Dowell* because it is "an institutional reform decree in a public school system as a method for remedying *de jure* segregation, and tellingly, that opinion [(*Dowell*)] does not mention Rule 60(b)(5) at all." 116 F.4th at 319.

The Board's invocation of *Frew v. Janek*, 780 F.3d 320 (5th Cir. 2015), is simply misplaced. *See* Def.'s App. Br. at 62. In fact, *Frew* only confirms that longstanding desegregation case law, not Rule 60(b)(5), governs here. In *Frew*, this Court also applied Rule 60(b)(5) in a non-desegregation case (there, Medicaid), expressly noting the "unique legal history" of desegregation cases, and explaining that *Freeman* and similar cases have "limited applicability" outside of the school desegregation context. *See* 780 F.3d at 329 n.37 (explaining that this Court has "cited *Freeman* almost exclusively in other school desegregation cases"). Accordingly, this Court must reject the Board's invitation to ignore controlling precedent governing the Board's duty to remedy the vestiges of *de jure* segregation.

Tellingly, not a *single* Rule 60(b)(5) case cited by the Board is a school desegregation case or otherwise supports departing from this longstanding desegregation precedent. Rather, each arises from "an entirely different creature." *Chisom*, 116 F.4th at 319; *see* Def.'s App. Br. at 64 (citing *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 183 (5th Cir. 2008) (appealing the modification of an injunction prohibiting appellant from filing claims without permission from the district court judge, due to history of vexatious filings) and *Hendrick v. Avent*, 891 F.2d 583, 588-89 (5th Cir. 1990) (affirming the district court's decision to not recharacterize complaint as a Rule 60(b)(5) motion challenging the district court's judgment regarding stock sale)).

To try to support its theory, the Board even mischaracterizes *Jackson v. DeSoto Parish School Board* as "a desegregation case." Def.'s App. Br. at 64. But *Jackson* is a reapportionment case, not a desegregation case—and likewise does not stand for displacing substantive desegregation law as the Board urges. 585 F.2d 726 (5th Cir. 1978) (observing that appellees could have moved under Rule 60(b)(5) for relief from a prior judgment regarding the scheme for election of school board members). In *Jackson*, this Court specifically underscored that its analysis concerned "reapportionment, [which is] *unlike school desegregation*." *Id*. at 730 n.1 (emphasis added). In short, the Board aspires to utterly disregard longstanding substantive law governing school desegregation cases and the showing required before they may be brought to a close. Whatever the standard for assessing consent decrees in other contexts, *Dowell* and progeny are the binding "substantive law" when it comes to desegregation compliance and the Board's attempt to escape its application cannot be countenanced.

And to be clear, Rule 60(b)(5) is just as inapplicable to the Plaintiff Class's Motion for Further Relief. *See* Def.'s App. Br. at 64-65. As an initial matter, the Plaintiff Class's request for further relief is not a request to "expand" the injunction, particularly since the relief the Plaintiff Class has requested—an order requiring the Board to eliminate the vestiges of segregation to the extent practicable—is the natural consequence of a failure to achieve unitary status. Indeed, "[t]o the extent

that the State has not met its affirmative obligation to dismantle its prior dual system, it shall be adjudged in violation of the Constitution and Title VI and remedial proceedings shall be conducted." *Fordice*, <u>505 U.S. at 743</u>.

Failure on the part of the Board "to implement a constitutionally prescribed unitary school system brings into play the full panoply of the trial court's remedial power." *Cowan*, <u>748 F.3d at 238-39</u> (citation omitted). "A district court has the continuing ability to order affirmative relief to cure violations flowing from the original constitutional violation, . . . and must retain jurisdiction over a school desegregation case until the vestiges of past segregation have been eliminated to the extent practicable." *Borel ex rel. AL v. Sch. Bd. Saint Martin Par.*, <u>44 F.4th 307, 312</u> (5th Cir. 2022) (citations omitted). As such, courts retain broad discretion to both enforce compliance with its desegregation decrees <u>and</u> to order further relief, if needed, beyond the terms of those decrees. *See, e.g.*, *United States v. Lawrence Cnty. Sch. Dist.*, <u>799 F.2d at 1044-45</u> ("This court has recognized that a federal court's power to remedy segregation is not exhausted by its issuance of a decree that promises to, but does not, work.").

The Board strains to suggest that *Dowell* itself forecloses this broad remedial power of the courts, on the theory *Dowell* addressed only the standard for "dissolv[ing]" an injunction. Def.'s App. Br. at 64. But nothing in *Dowell* supports the Board's argument. In fact, *Dowell* itself acknowledges prior efforts by the district

court to order additional relief to bring the school district into compliance. *See Dowell*, 498 U.S. at 241 ("In 1972, finding that previous efforts had not been successful at eliminating state imposed segregation, the District Court ordered the Board to adopt [a new student assignment plan].").

Indeed, this Court has many times over affirmed the authority of courts to issue such further relief—without any reliance on Rule 60(b)(5). *See, e.g.*, *Borel*, 44 F.4th at 312 ("A district court has the continuing ability to order affirmative relief to cure violations flowing from the original constitutional violation … and must retain jurisdiction over a school desegregation case until the vestiges of past segregation have been eliminated to the extent practicable.") (citation omitted); *Valley v. Rapides Par. Sch. Bd.*, 702 F.2d 1221, 1225 (5th Cir. 1983) (affirming, without reference to Rule 60(b)(5), the district court's grant of further relief because "[f]ailure on the part of school authorities to implement a constitutionally prescribed unitary school system brings into play the full panoply of the trial court's remedial power"); *see also, e.g.*, *Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 336 (5th Cir. 2018) (affirming, without reference to Rule 60(b)(5), district court's grant of further relief); *Davis*, 721 F.2d at 1437 (similar). Nor does the history of this case provide any support for the Board's argument: not one of the Plaintiff Class's prior motions for further relief were styled as Rule 60(b)(5) motions, including at least one such motion filed *jointly with the Board*. *See, e.g.*, ROA.1216-26 (Nov. 18, 1981 Joint

Mot. for Further Relief); ROA.424-27 (May 20, 1970 Mot. for Further Relief);

ROA.4861-63 (Aug. 8, 1966 Mot. for Further Relief).

The Board's waiver argument too is meritless. Def.'s App. Br. at 64-65. The

Plaintiff Class specifically addressed Rule 60(b)(5)'s application in its opposition to

the Board's dispositive motion pending before the District Court, explaining that

even if Rule 60(b)(5) applied, the Board cannot meet the requirements for dissolving

the injunction under that statute either. *See, e.g.*, ROA.7865-67; ROA.8406-07.

In any event, as addressed in the Jurisdictional Statement above (pp. 1-7) and

the Plaintiff-Appellee Class's separate Motion to Dismiss these appeals for lack of

jurisdiction (ECF Nos. 39 & 52), the District Court has yet to even decide whether

to apply longstanding desegregation law or Rule 60(b)(5) (or neither or both) in this

case. Those issues remain fully pending below. And yet, the Board purports to ask

this Court to "reverse" a notional decision "on de novo review." Def.'s App. Br. at

62. But "[i]t makes no sense to apply 'de novo review' to a question unreviewed by

the district court; that is neither 'de novo' nor 'review.' Rather, that's *tabula rasa*

first view." *Kieffer*, 991 F.3d at 638. At minimum, the District Court should be

permitted to rule in the first instance before any appeal.

### C. Nor Can the Board Avoid Curing Its Constitutional Violations by Claiming Laches or Failure to Prosecute, Which in Any Event Cannot Now Apply Given That the Parties Have Been Engaged in Active Litigation for the Last Seven-Plus Years.

The Board still has the duty to cure its constitutional violations, and claiming

laches or failure to prosecute does not negate these obligations. In essence, the Board seeks to put the blame on the Plaintiff Class for its own inaction. Def.'s App. Br. at 55. But the Board may not avoid its duty to eliminate the vestiges of *de jure* segregation root and branch. It is the Board who should be estopped from making such an argument when the parties have spent the last seven-plus years in active litigation, including through substantial amounts of fact and expert discovery and other proceedings before the District Court—consuming tremendous judicial and party resources without the Board once raising any concern about supposed laches or failure to prosecute. Estoppel must therefore preclude the Board "from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 750 (quoting *McCaskey*, 9 F.3d at 378). The Board's arguments are, at the very least, seven years too late.

Moreover, the Plaintiff-Appellee Class did not fail to prosecute anything: the Plaintiff Class successfully prosecuted this action, and the Board was found liable. The Plaintiff Class remains ready and willing to assist the Board with curing its constitutional violation so that the school system can finally provide equal educational opportunities to all students. The Board, however, cannot excuse its failure to cure its constitutional violation by criticizing the Plaintiff-Appellee Class for not filing additional motions for further relief over the years to compel the Board's compliance. It is the Board, not the Plaintiff-Appellee Class, who is "clearly

charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." *Penick*, 443 U.S. at 458-59 (quoting *Green*, 391 U.S. at 437-38 (1968); *see Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 26 (1971) (requiring "every effort to achieve the greatest possible degree of actual desegregation").

As discussed, the only way for the Board to be released from the jurisdiction of the District Court is for the District Court to make specific findings of fact that the school district has achieved unitary status by eliminating all vestiges of *de jure* segregation. "The inquiry is 'whether the vestiges of de jure segregation had been eliminated as far as practicable,'" *Thomas*, 756 F.3d at 388—not whether the Plaintiff-Appellee Class continued to file motions to remind the Board of its legal duty. The District Court has not found the District unitary, therefore, the Board still has a duty to cure its constitutional violation, regardless of any action by anyone else.

Additionally, in a desegregation case, "the passage of time is an evidentiary consideration, but not a bar to the usual burden-shifting rules." *Jenkins ex. rel. Jenkins v. Missouri*, 122 F.3d 588, 595 (8th Cir. 1997). "[A]n integrated school system is no less desirable because it is difficult to achieve, and it is no less a constitutional imperative because that imperative has gone unmet for 38 years." *Freeman*, 503 U.S. at 518 (Blackmun, J., concurring in judgment in which O'Connor

and Stevens, JJ. joined). "The passage of time alone does not erase racial imbalance as a vestige of prior *de jure* discrimination." *Dowell ex rel. Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*, 8 F.3d 1501, 1516 (10th Cir. 1993). This is "because discriminatory intent does tend to persist through time." *Fordice*, 505 U.S. at 747 (Thomas, J., concurring).

"If the actions of school authorities were to any degree motivated by segregative intent and the segregation resulting from those actions continues to exist, the fact of remoteness in time certainly does not make those actions any less 'intentional'" *Keyes v. School Dist. No. 1*, 413 U.S. 189, 210-11 (1973). The "lingering effects" of segregation do not "magically dissolve" without affirmative efforts by the school district; rather, "if left unattended, they fester" and "[t]he Constitution does not permit the courts to ignore today's reality because it is temporally distant from the initial finding that the school system was operated in violation of the constitutional rights of its students." *Brown v. Bd. of Educ. of Topeka*, 978 F.2d 585, 590 (10th Cir. 1993); *see, e.g.*, *Davis*, 721 F.2d at 1428 (ordering district to create new plan in 1983 in a case that began 27 years earlier in 1956). Given the governing law, the Board's contention that it relied on the Plaintiff-Appellee Class's "inaction" to conclude it no longer had any duty to remedy its past *de jure* segregation is simply meritless. Def.'s App. Br. at 60.

Citing *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College* ("*SFFA*"), 600 U.S. 181, 204 (2023), the Board also claims it "relied" on Plaintiffs' alleged inaction "to go about its business as a usual"—building schools, closing schools, and avoiding any affirmative efforts to remedy prior discrimination. Def.'s App. Br. at 60. Unfortunately for the Board, not only was its "business as usual" contrary to its obligation to remedy all vestiges of *de jure* segregation, its failure to effectuate desegregative measures but also is contrary to *SFFA* itself. In that opinion, *SFFA* expressly *reaffirmed* that race-conscious action can be necessary when "remediating specific, identified instances of past discrimination that violated the Constitution" (as in school desegregation cases). 600 U.S. at 207.

The Board also claims its actions were consistent with the Fourteenth Amendment, asking this Court to compare failure to satisfy its desegregation obligations with the *SFFA* decision. However, nothing in *SFFA* permits a school district subject to a remedial order to shirk its duties for decades, and to now erroneously invoke that decision to justify its longstanding failure to achieve unitary status.

The Board cannot point to a single post-liability case—let alone a single desegregation case—to justify its "failure to prosecute" argument. Again, the Board was found liable and subjected to an order long ago, and it is the *Board* that has long failed to satisfy its duties under the order to cure the constitutional violation.

As to laches, none of the Board's citations considers—let alone applies—laches as a means to absolve a school district of its duty to eradicate all vestiges of segregation. *See Henry v. Clarksdale Mun. Separate Sch. Dist.*, 579 F.2d 916 (5th Cir. 1978) (laches precluding a claim for attorney's fees); *Pegues v. Morehouse Par. Sch. Bd.*, 632 F.2d 1279 (5th Cir. 1980) (discussing laches defense to Black coach's demotion claim, but making no determination on the merits and remanding issue); *Liddell ex. rel. Liddell v. Bd. of Educ. of City of St. Louis*, 142 F.3d 1103 (8th Cir. 1998) (laches precluding a specific school's claim for reimbursement). In fact, in *Liddell*, the Eighth Circuit reiterated its rejection of the district's claim of unitary status. *See* 142 F.3d at 1106.

Furthermore, laches is an equitable defense that requires "actual prejudicial change." *Pegues*, 632 F.2d at 1283 & n.5. It cannot be wielded to evade the Board's burden, particularly where the Board is attempting to raise laches after more than seven years of renewed, active litigation. The Board cannot show any "actual prejudicial change." Since 1965, the Board has been duty-bound to fulfill its desegregation obligations and has not done so. This continued obligation does not prejudice the Board, it is merely what is constitutionally required. *See, e.g.*, *Dowell*, 498 U.S. at 247 (ending a desegregation order depends on evidence that the purposes of the litigation had been fully achieved). The Board's attempt to raise laches now is a last-ditch effort to avoid curing its constitutional violation. The only prejudice

is to the Plaintiff Class, which has long been entitled to schools free from the vestiges of *de jure* segregation.

## CONCLUSION

The Plaintiff-Appellee Class respectfully requests that this Court dismiss the Board's consolidated appeal for lack of jurisdiction or, in the alternative, affirm the rulings below.

Dated: August 11, 2025                    Respectfully submitted,

<div style="margin-left: 40%;">

/s/ Michaele N. Turnage Young
Michaele N. Turnage Young
Anuja D. Thatte
Avatara Smith-Carrington
Morgan Humphrey
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street N.W., Ste. 600
Washington, D.C. 20005
(202) 682-1300

Gideon T. Carter, III
PO Box 80264
Baton Rouge LA 70898-0264
T: (225) 214-1546

***Counsel for Plaintiff-Appellee Class***

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system this August 13, 2025. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

<u>/s/ Michaele N. Turnage Young</u>
Michaele N. Turnage Young

***Counsel for Plaintiff-Appellee Class***

Dated: August 13, 2025

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 12,266 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used to calculate the word count).

/s/ Michaele N. Turnage Young
Michaele N. Turnage Young

***Counsel for Plaintiff-Appellee Class***

Dated: August 11, 2025